ELIZABETH BRADSHAW, *et al.* vs. LEWIS GARRETT, *et ux.*

*Error from Lawrence Circuit Court*—Before the Hon. S. L.
PERRY.

A bill of review may be granted either for errors of law apparent in the
decree sought to be reviewed, or for the discovery of new matter.

As a general rule, no review ought to be granted of a fact previously in
issue, on account of newly discovered evidence ; unless that evidence
be in writing, or on record, and does not consist in swearing alone.

While this rule will be applied to the situation occupied by parties, it
must appear that they have done every thing which can reasonably be
required, to avail themselves of 'new matter during the pendency of
the writ, which they desire to review.

This case came up on the dismission of a bill of review.

In 1824, William Bradshaw recovered a judgment on a
note for one hundred and twenty-five dollars against Lewis
Garrett.   Garrett had married with the widow of one Ogel-
vie, on whose estate Bradshaw was co-administrator with
Mrs. Ogelvie ; and the note forming the foundation of the
judgment had been given to Bradshaw by Garrett in settle-
ment for moneys paid as such administrator.   In 1827 Gar-
rett and wife filed their bill to enjoin the judgment, on the
ground that it had been obtained by fraud and duress.   The
bill alleged that Bradshaw had obtained the note by falsely
pretending to have paid a debt previously subsisting against
the estate of Ogelvie, when in fact he had not done so.—
Bradshaw's administrators, he being deceased, answered
generally as to their belief of the fairness of the transaction
under which the note was obtained.   On the hearing of the
testimony taken in the cause, the injunction was perpetuated.
In 1829, the plaintiffs in error filed their bill for review.   The
ground relied on in obtaining this review, was the discovery,

Bradshaw
vs.
Garrett.

that during the pendency of the former suit, Garrett was discovered to have in his possession a memorandum or receipt, disclosing the items for which the note had been given, and thus proving the fairness of its consideration. To this bill for review, Garrett and wife filed a supplemental bill, insisting that the note had been given without consideration and for duress. In 1831, PERRY, Chancellor dismissed the bill for review.

The plaintiffs now assigned that dismission as error, on the ground that the new matter discovered was sufficient to authorise the review.

HUTCHISON, for Appellants.

The note from Garrett to Bradshaw, was given in 1822, the judgment on it was rendered in 1824, the injunction of the judgment was granted in 1827, and now in 1834, it is to be finally determined if a debt, founded on good consideration, shall be collected ! The bill for the injunction was by Garrett and wife, she being the relict of Ogelvie. It alleged, that many years before the note, she and Bradshaw were appointed administrators of Ogelvie ; that he acted solely ; that when the note was given there was a suit pending against them in the District Court of West Tennessee for one hundred and twenty-five dollars, and that B. by falsely stating he had paid the demand, got the note, when truly judgment in the case was not given until 1825, and then paid by Th. White, her brother. There was a fugitive averment of a *devastavit* by Bradshaw. The administrators of Bradshaw answered on belief, that there was neither fraud nor *devastavit*, and that the note was fairly obtained, and for a good consideration. The documentary and testimonial evidence read on the hearing, had been filed and taken by Garrett and wife. It contradicted the idea of *devastavit*, showed a final settlement of Ogelvie's estate in 1816, and a balance found in favor of the administrators of $206 50. It showed no misrepresentation or unfairness in obtaining the note, and the on-

ly disclosure about the consideration was that by White, who stated that Bradshaw presented a claim on account of a payment to the marshal of West Tennessee, and other items constituting $125, and his wife proved that Garrett, after doubting and deliberating, gave the note to shun law. The chancellor, SAFFOLD, not mistaking any doctrine of equity, but by a most palpable mistake as to what was proved, perpetuated the injunction, as if the note had been obtained without consideration and by fraud; but deeming the excuse for not defending at law, doubtful, taxed the costs to Garrett and wife. His decree was in September, 1828. At March term, 1829, Bradshaw's administrators presented their bill for review, and it was on full argument, allowed. It sought review, and change of the decree for error apparent, and for new matter. The new matter was, that in August prior to the decree, when Garrett was examining his witnesses in Maury, Tennessee, he produced the receipt he had taken from Bradshaw, expressing the items for which the note had been given; that, that disclosure enabled the administrators to obtain full information, and to prove that their intestate had paid those items; that not having time to obtain a commission from Alabama for the examination of the witnesses, and remission of the evidence, before the approaching term, they sent their agent to attend the court and procure a continuance; that he did attend, and left an affidavit of continuance with J. B. Craighead, the solicitor, but returned to Tennessee before the cause was called; that it was believed a continuance had been sought. This bill was verified by the agent, who had been present at the exhibition of the receipt, and the letter of A. Porter to the administrators, about the items raised in the receipt, was exhibited. When the review was ordered, Garrett and wife obtained leave to amend their bill, and did file an amendment, in which the receipt itself was exhibited, and the new matter admitted. The amendment, however, alleged, that the items had not been paid by Bradshaw, and that the note originated in the circum-

Bradshaw
vs.
Garrett.

stances of duress alleged. At September, 1830, there was an agreement of the parties, entered of record, that the bill of review and amendment should be as upon publication and *confesso*, and that upon the re-hearing, all the evidence should be read, so far as competent, relevant, and credible, waiving all other objections. This embraced the depositions taken before and since the decree. There was not the least proof of the matters of avoidance contained in the amendment—whilst, on the contrary, the new matter stated in the bill of review, and admitted in the amendment, was amply established. Chancellor PERRY, at March term, 1831, dismissed the bill of review, at the costs of Bradshaw's administrators, and charged them with the costs of the amendment.

The matters assigned for error, raise these questions :

1. Was the bill for review the proper mean to reform the decree ?

2. Were the errors assigned to reverse it, well taken ?

3. Was the new matter properly introduced—was it sufficient—was it proved ?

The ordinary course to reverse a decree, is by appeal , but it may be done in the court of original jurisdiction by original bill, if obtained by fraud, by motion to correct a miscalculation or ministerial error, or at the same term, or before enrolment, by a bill in the nature of one for review, for error apparent or new matter. But after enrolment, a bill of review lies, to reform the decree for error apparent on its face, or context, or for newly discovered matter. These principles were sufficiently recognised in *Caller* vs. *Malone*, June, 1832.

As Judge SAFFOLD gave the decree alleged to be erroneous, and as it is desired to have the cause finally determined by a full court, we omit to apply the doctrine of *Caller* vs. *Malone* to the errors assigned in the bill of review, or to urge the consideration of them.

Then as to the last enquiry. It is declared in *Caller* vs. *Malone*, that the ancient rule in regard to the ground laid for

the introduction of new matter, is relaxed, and that now it is sufficient if it were discovered at a time or under circumstances that prevented its introduction on the hearing.    Thus it was in this instance : there was not time after the discovery to obtain the evidence; and full diligence was used to obtain a continuance.    It is presumable a continuance was prayed, and the rejection of it could not of course appear. Bradshaw's administrators were defendants, and could not save their rights by a dismission on the refusal of a continuance with a view to reinstate suit.    Yet if the ground laid for presentment of the new matter had been insufficient, it was addressed to the discretion of the court below, and having been held sufficient, the only subjects of determination left open were, the insufficiency of the new matter, and whether it was proved.—*Wilson* vs. *Webb*, 2 *Cox C. R.* 3.    The sufficiency of the ground for offering the new matter was expressly submitted to the discretion of the chancellor, by the statute on the subject of bills of review.    To order the case to be re-instated and re-heard, was no decree on the merits ; only a determination that the circumstances inducing it were satisfactory.    It was equivalent to reinstating a cause after a non-suit, or granting a new trial at law.    But since Garrett and wife, by their amendment, have not only admitted the receipt, which was the chief new fact, but brought it into court, and alleged matters in avoidance of it : since by this step Garrett has tacitly admitted that the injunction was obtained and perpetuated by his own perjury, and the course of justice perverted and abused, are we to cast back in quest of the *Shebboleth* by which Bradshaw's administrators got back into the sanctuary, in regard to the facts evidenced by the receipt?    Is this to do justice and equity?    Then as to the agreement to re-hear the cause on the original and new evidence, is that to have no influence ?    Is this to be a case in which both parties have agreed to a re-hearing, on a subject cognizable in chancery,—but which cannot be heard on its merits—because a continuance might have been ask-

ed—because there might have been evidence that it was not asked ? If such be truly the mode in which equity, the end of all law, can alone be attained, it is greatly to be desired that the temple be closed up forever, and the citizen no longer deluded by the hope of obtaining it here. In this instance it will be seen, that after a debt has been ascertained by adjudication at law, the chancellor has taken cognizance of it ; and when finally both parties agree he shall hear the whole evidence about it, he will not ; because on one side the *form* was not observed, although the subject was previously brought before him by *perjury !* If Garrett, with the receipt in his pocket, could safely and truly verify the bill for injunction, then the term *perjury* may be too harsh ; but how is it to be otherwise esteemed ? . .

Was the new matter sufficient ? The rule put in *Caller* vs. *Malone*, is, that in general it must not be merely additional or cumulative, nor to be shewn by oral proof ; yet, though it be additional and cumulative, if it bear on the decree, and be such as may require the decree to be different—and if too the evidence be in writing or of record, it may be received. The evidence here was in writing. The receipt newly discovered, became the highest and unerring evidence of the real consideration of the note. The items it mentioned became coupled with the note by the evidence of Thomas White, taken by Garrett and wife, before the decree ; and to defeat the receipt produced by themselves, with their supplement, it was only required that they should prove the matters of avoidance they averred. That they did not do. On the contrary, Bradshaw's administrators proceeded to prove, and did prove affirmatively, that Bradshaw had paid the items specified.

Not to examine whether the decree perpetuating the injunction originated in an obvious mistake or inadvertence of the presiding Judge, or in a deliberate judgment, in which he mistook or misapplied the law—but taking the whole evidence together, it will appear that there never was the least ground

to impeach the note. The judgment upon it, therefore, ought to be restored, at the costs of Garrett and wife; and the causeless and vexatious delay occasioned to the administrators of Bradshaw, ought to be compensated by the damages allowed by the statute, and that too, to the utmost.

STEWART, *contra.*

By Mr. Justice THORNTON:

This case comes into this court by appeal from a final decree of the chancellor below, dismissing a bill of review, allowed for the purpose of opening a decree pronounced, perpetuating the injunction of a judgment at law. The injunction was granted upon allegations that the note*upon which the judgment at law was obtained, was executed to the intestate of the appellants without any good or valuable consideration, but upon a false representation by him that he had advanced the amount of said note in satisfaction of a certain judgment, for which the estate of one Ogelvie, (of whom Garrett's now wife, was late relict, and co-administratrix with Bradshaw) was liable; and that the false representations were not discovered in time to defend at law. The appellants answered the said bill, denying the alleged illegality in the consideration of the said note. Afterwards, upon the final hearing of the cause, the injunction was perpetuated by the decree of the chancellor. At the next term after this decree was rendered, the appellants filed a bill praying for a review of the said cause, because of sundry errors assigned as apparent in the decree, as also because of new matter, discovered, as is alleged, too late to be available on the former trial.

The failure of the consideration of the note upon which the judgment at law was obtained, rests upon the proof relative to the statement of the said Bradshaw to the appellees; that he had paid the amount towards the discharge of the judgment above mentioned; and the further proof, that the said

Bradshaw<br>vs.<br>Garrett.

Bradshaw
vs.
Garrett.

judgment was in fact, satisfied by other means, and not by Bradshaw. The new matter disclosed in the bill of review, is a receipt in the following words : " Dec. 16th, 1822—Received of Lewis Garrett one hundred and twenty-five dollars in full of all moneys paid by me as administrator of the estate of David Ogelvie, dec'd, to the following persons, to-wit, &c." specifying the amounts paid each, and tested by the hand and seal of the testator Bradshaw, and then the additional explanatory facts, supported by parol testimony, that Garrett held such receipt in his possession during the pendency of the former trial, and acknowledged that he executed the note upon which the enjoined judgment was recovered, upon the execution of the receipt—the one hundred and twenty-five dollars named therein being paid by the said note, and not in money as therein stated.

This new matter would, it is apparent, have had powerful weight in the former trial, if it had not produced an entirely different result ; but before we can advance to an examination of the whole evidence and to a decision upon it, we are met by the preliminary question (which arises in every case upon appeal from the final decree on a bill of review) whether it was competent for the chancellor, according to the settled rules regulating his discretion in such cases, to grant the prayer of the bill and open the decree already pronounced between the parties.

A bill of review may be granted either for errors of law apparent in the decree, or for the discovery of new matter. The former ground not being relied on in this case, it rests upon the new matter disclosed in the bill.

The settled rule in relation to bills of review, and the new matter upon which they originate, is that no review ought to be granted of a fact formerly in issue, on account of evidence newly discovered, unless that evidence be in writing or record, and does not consist in swearing only.[a] In order to apply this rule, let us first see what is the nature of the new matter disclosed in this bill of review—that is, whether it be

a 3 Mars. 121

new matter pressing upon the decree, which was not in issue on the former trial—or cumulative testimony only, in support of the same issue. To test this, what was the matter which properly constituted the issue in the original trial? The bill for the injunction was solely founded on the allegation of fraud in the consideration of the note sued upon at law; the issue was the validity, or not of its consideration. The new matter, according to my apprehension, is nothing else than testimony to that issue. Such being the nature of this new matter, it would clearly be an insufficient foundation for a review, unless, under the exception expressed in the rule above laid down, such new matter or evidence be in writing or record, and does not consist in swearing only. This leads us to the consideration of the new matter in reference to that exception to the rule. So far as it consists in writing, it is a receipt executed by the intestate of the appellants, as copied above. This by itself, without the parole testimony accompanying and explaining it, sheds not the least light upon the former issue. It is the parole testimony of Garrett's possession of this paper, and his acknowledgments respecting it, together with the proof that it was for Garrett's note for the one hundred and twenty-five dollars, and not for the sum in money, as it purports to be, which alone render the writing in the least degree material, or even admissible as evidence on the first trial. The newly discovered written evidence then, I consider wholly nugatory, unless the parole evidence alluded to be also introduced; which it seems to be well settled, cannot be admitted as to a point put in issue in the former trial.[a]

The operation of the general rule, may in this instance, seem to inflict a particular hardship, which is often the case with the general rules of law: but the rule cannot be departed from. Its tendency is highly salutary, impelling the parties to diligence in the prosecution of their rights—tending to terminate litigation as a preventive of perjury and its subornation—and of the undue advantage which would often be

Bradshaw
vs.
Garrett,

[a] Hardin, 342

sought, by withholding the matter and taking the chances of a trial, then in case of a failure, introducing the cumulative evidence by bill of review, when by lapse of time, the means of meeting it on the other side may have been swept from the scene of action. The principles of equity applied in this decisson, are recognised by this court in the case of *Caller vs. Malone,* in which there is a luminous exposition of the authorities relative to this branch of equitable jurisprudence.

This is the course of reflection, by which I have arrived at the conclusion, that the decree appealed from, should be affirmed. In this conclusion there is a concurrence of the whole court; but my brethren entertain the opinion that the rule laid down above, that no review ought to be granted of a fact formerly in issue, on account of evidence newly discovered, ought not to be extended to embrace the new facts set up in this bill. They consider, and perhaps with the best reason, that as the complainants in the bill for review, were only representatives of the deceased, William Bradshaw, and so not presumed to be cognizant of the facts; and as the facts themselves as set up, are more properly rebutting of those adduced on the other side, than strictly cumulative upon others before proven upon the same point by them; it would have been admissible to allow them the benefit of those facts by bill of review, if they had used the requisite diligence to procure them in the former trial. This latter view of the case, makes it necessary to consider whether such diligence was used; as in any event, let the facts be of what nature they may, should be required of a litigant, and in default of which, a bill of review would not be entertained. The facts came to the knowledge of the complainants about the 25th of August, and the trial term of the Lawrence court at which the cause was heard, commenced on the first Monday in September following. Whether there would have been a reasonable time in this interim to have taken the necessary proofs, the record does not disclose enough of the attending circumstances to enable us to determine. If however, the

distance of the residence of the parties and witnesses were such, as made it impracticable, with ordinary diligence, to take the proofs, yet it surely was incumbent on the parties to apply for a continuance of the cause ;[a] which we are bound to infer would have been granted upon proper affidavits of the matters to be proved. No sufficient excuse is afforded for this omission, and hence, even if the matters discovered could otherwise furnish ground for a review, we all concur in the opinion, that the complainants cannot now disturb the former adjudication—not having done every thing which could be reasonably required, to avail themselves of the new matter during its pendency.