# CALEDONIA COUNTY.

## MARCH TERM, 1842.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
      "    STEPHEN ROYCE,
      "    JACOB COLLAMER,    } *Assistant Justices.*
      "    MILO L. BENNETT,

## TOWN OF KIRBY *v.* TOWN OF WATERFORD.

A new trial may be granted in a pauper case where the testimony is newly discovered and not cumulative, and will change the verdict, and the parties have not been negligent. Cumulative testimony is where the newly discovered testimony is to the same fact litigated at the former trial, but is not cumulative when it is to a different fact.

THIS action came into this court by an appeal taken by the town of Waterford from an order of removal of one Mary Olive Goodhue, made by two justices of the peace, removing said Mary O. Goodhue as a pauper from the town of Kirby to the town of Waterford. Plea, that the pauper was unduly removed, because the town of Waterford was not the place of the pauper's legal settlement. and issue to the jury.

It was admitted, on trial, that the pauper was the legitimate daughter of one Ephraim T. Goodhue, and that she took a derivative settlement from her father.

The appellees claimed that said E. T. Goodhue had his last legal settlement in Waterford, by virtue of the act passed November 6, 1801, entitled 'an act in addition to, and defin-' ing what shall be deemed a legal settlement, and for the sup-

'port of the poor,' &c., and that he had resided in Waterford one year, while said act was in force, without having been warned out of said town ; and to support the issue on the part of the appellees, they gave in evidence that said E. T. Goodhue, on the 28th day of August, 1804, bought and had conveyed to him, by a well executed deed from one Samuel Goodhue, one hundred acres of land in said Waterford. Also that said E. T. Goodhue owned fifty acres of land in said Waterford, deeded to him by John Armington and Abel Willey, dated the 5th day of September, 1808, and that on the 1st day of October, 1810, he sold both pieces of said land to John and Elias Cheney ; that while he owned said land he cleared about seventeen acres, and built a barn on the same, and raised several crops of grain on said land, and cut some hay on the same ; that in the year 1808 said Goodhue's poll and three acres of land were set in the grand list of Waterford, and in the year 1809 his poll and five acres of land were set in the grand list of Waterford ; and that a two year old colt was set in the said grand list to said Goodhue in the year 1814, and a horse was set in the said grand list to said Goodhue in the year 1815.

The appellees gave evidence tending to prove that said Goodhue, while he owned said land, resided in said town of Waterford one year ; that while he was in Waterford he worked on said land at times, at other times he would go into other towns and do some work ; that at other times he would go to Groton, N. H., and stay with his friends a short time, always returning to his land in Waterford until he sold it ; that while he resided in Waterford he had no steady home, but went about, from house to house, among his neighbors, staying as long as they would keep him ; that at other times he lived in an old shanty or hut, and that he never was in Waterford over ten months at one time; the other two months he was travelling about as aforesaid.

The appellees also introduced testimony tending to prove that said Goodhue, during the time aforesaid, had a chest, or trunk, that he kept at Waterford, in which he kept his notes and papers, and said trunk was at the dwelling house of one Stoddard, in Waterford, four or five years, and that he left his bed and bedding at the house of one Morgan, in Waterford, when he was at Groton, N. H. During all the afore-

said time said Goodhue was a single man, having no family.

The appellees requested the court to charge the jury that if said Goodhue resided in Waterford one year during the time aforesaid, at any one time, without having been warned out of said town, the appellees were entitled to a verdict, and that to find this residence it was not necessary that said Goodhue should have remained all the time in Waterford for one whole year, but that if he made Waterford his home while he owned said land, at any time during one year, and during said year he at times worked or visited in other towns, intending to return to his farm in Waterford, and did so return, and that when absent he left his property and effects in said Waterford, the verdict should be for the appellees.

The testimony introduced on the part of the appellants tended to show that the pauper's father, during all the time of his being occasionally in the town of Waterford as aforesaid, had every year returned to his friends in Groton, N. H., to spend the winters ; that he called that his home during that time ; that wool and grain which he raised in Waterford he carried to Groton, N. H., and that he had no place of residence or home in Waterford for any longer time than he actually remained there, and that some years he came to Waterford, and spent only a few months, and in other years more time, always in the spring or fall, for the purpose of overseeing the cultivation of his land ; that he was, at all times, a tramping, transient person, having no home or fixed habitation ; that when he left Waterford it was altogether uncertain *when* or to *what point* he would return, or that he would return at all, except to take care of his land and other little property.

The court charged the jury that if the pauper's father had his residence in the town of Waterford for the space of one whole year at one time, between the years 1801 and 1817, this would fix his settlement in that town, which would be the settlement of the daughter till she acquired one in her own right. For the purpose of this residence it was not necessary that the father should have spent the entire year in Waterford ; if that was his home, the place of his abode, the centre of his operations, it was sufficient, although he might have left there to visit his friends, or for any other temporary purpose, and been absent any length of time. But if the

father's home during this time was in Groton, N. H., and that was the place of his abode and the centre of all his operations and accumulations, and he came to Waterford only to carry on his land for the season, and if, when he left, he left no place of abode where an officer, serving process, could leave a copy, and had no fixed intention of returning to any particular spot, he could not be said to have any residence in the town of Waterford for the purpose of gaining a settlement, beyond the time of his actual commorancy at most, which was admitted to be less than one year at one time.

To which refusal to charge, and to the charge as given, the appellees excepted after verdict and judgment for appellants.

There was, also, a petition for a new trial in this case, addressed to this court, on the ground of new-discovered evidence by which the appellees could prove that said E. T. Goodhue, the father of the pauper, had gained a settlement in said Waterford under the act of 1797. The facts stated in the petition were fully supported by affidavits.

*D. Hibbard, Jr.*, and *W. Upham*, for plaintiffs.

1. As to the charge. The jury were charged that if Ephraim T. Goodhue, the father of the pauper, ' when he ' left Waterford, left no place of abode where an officer, ' serving process, could leave a copy, and had no fixed inten- ' tion of returning to any particular spot, he could not be said ' to have any residence in the town of Waterford for the pur- ' pose of gaining a settlement, beyond the time of his actual ' commorancy.' This part of the charge, we humbly conceive, was erroneous.

The judge, when he instructed the jury that E. T. Goodhue could not have gained a settlement in Waterford, unless he had some place of abode there where an officer, desirous of serving process upon him, could have left a copy, should have informed them what in law would have constituted such place of abode. The jury may have thought, and probably did, that if E. T. Goodhue left Waterford for a visit to his friends in New Hampshire, intending to return in a few weeks, and made no contract when he left for a boarding place on his return, he had no place of abode in Waterford, where an officer, desirous of serving a process upon him, could have

left a copy of it! If the jury came to such a conclusion they most unquestionably mistook the law.

The place for an officer to have left the copy of his process was where Goodhue last resided before he left town, and if he resided in no particular family, at the place where he kept his chest and papers, or bed and bedding.

But again; the charge was erroneous in this, to wit, the judge instructed the jury that E. T. Goodhue could not have gained a settlement in Waterford by his residence there unless, when he left to go to his friends in New Hampshire, he had a fixed intention of returning to some particular ' spot ' in Waterford! We think if he went to visit his friends in New Hampshire, with an intention of returning in a few weeks to his property in Waterford, his residence continued there, although he had no fixed intention of returning to any particular ' spot' or family. It was sufficient if he intended to return, and did return.

2. As to the refusal to charge. It is well settled, we take it, that it is error for the county court to refuse to charge the jury on a material point, when requested so to do. *Briggs* v. *Georgia*, 12 Vt. R. 60. *Crumpton* v. *The Inhabitants of Solon*, 2 Fairfield's R. 335.

The plaintiffs, in the court below, introduced testimony tending to show that E. T. Goodhue, during the time he resided in Waterford, had a chest or trunk in which he kept his notes and papers, and that he kept it at one Stoddard's, in Waterford, for the term of four or five years; and also that he had a bed and bedding which he kept at one Morgan's, in Waterford.

The county court was requested to charge the jury that this evidence, in connection with the other testimony in the case, was important to give character to Goodhue's residence in Waterford, and show that he considered it his home; but the request was disregarded, and not a word was said upon the subject to the jury. *Newbury* v. *Topsham*, 7 Vt. R. 407. *Boardman* v. *Bickford*, 2 Aiken's R. 345.

In *Gordon* v. *Tabor*, 5 Vt. R. 103, a new trial was granted, on a bill of exceptions, because the court instructed the jury upon two matters only, when there were several others proper for their consideration, that should have been coupled with them.

3. As to the petition for a new trial. The ground of this petition is *newly* discovered evidence; and we are well aware that new trials are seldom granted, in this court, for that cause. The principal reason probably is that most of our cases are open to review, and all the evidence that can fairly be brought to bear upon a case is looked up and produced at the final trial. There is, however, another reason which undoubtedly has considerable influence with the court upon applications of this kind, and that is the *cumulative* character of the newly discovered evidence. The difficulties that generally attend, and so frequently defeat, applications of this character, will not be found to embarrass this. Our case was not open to review. The verdict we seek to set aside was given upon the first and only trial that could be had in the case. And again, our newly discovered evidence is not of a *cumulative* character. It is upon a point not litigated at the former trial. The plaintiffs, at the former trial, attempted to fix the settlement of the pauper in Waterford, by showing that her father, E. T. Goodhue, had gained a settlement there under the act of 1801, by one year's residence, without having been warned out of the town. The newly discovered evidence, if believed, shows, beyond all controversy, that E. T. Goodhue gained a settlement in Waterford under the act of 1797, by one year's residence. 4 Wendell, 579. 10 do. 285. The petitioners cannot be charged with negligence in not looking up and producing this evidence at the former trial.

The plaintiffs were obliged to rely upon the old people of Waterford for evidence to sustain their case, and all that could be found, having a tendency to support the issue on their part, they produced. It was not expected by the plaintiffs that persons, situated as the inhabitants of Waterford were, would volunteer to say much against the interest of their town, and they were not disappointed in their expectations.

The discovery of *new* and material evidence which could not, in the exercise of reasonable diligence, have been discovered and produced at the former trial, has always been considered a good cause for granting a new trial.

The principles which govern applications of this kind may be summed up in a few words. The person who asks for a

CALEDONIA,
March,
1842.
─────
Kirby
v.
Waterford.

new trial, for the cause set forth in this petition, must satisfy the court, 1. That the evidence has come to his knowledge since the trial. 2. That it was not owing to the want of due diligence that it did not come sooner ; and 3d. That it would probably produce a different verdict, if a new trial were granted.  *Myers* v. *Brownell*, 2 Aikens' R. 407.  Graham on New Trials, chap. XIII., commencing on page 462, and cases there cited.

*C. Davis* and *J. D. Stoddard*, for defendants.

It is difficult to perceive what ground of complaint the appellees have in the present case, unless it be that the jury rendered a wrong verdict upon the testimony submitted to them.  No question is made upon the admission or rejection of testimony.  The charge of the court is open to comment, but we are at a loss to understand what particular part of it is liable to just exception.  There seems to have been no controversy or room for controversy as to the law of the case. The pauper had, by derivation, the settlement of the father, Ephraim T. Goodhue.  Whether his legal settlement was or was not in Waterford, constituted the sole question.  The main features of the evidence, adduced on both sides, are exhibited in the bill of exceptions.  Enough appears to show that the *fact* of settlement, to be gathered from a great variety of circumstances bearing upon the movements and intentions of the father, was one of no easy solution.  It was, however, determined by the jury in a way satisfactory to their own consciences, and, unless they were misled on some material point by the instructions given as to the law, or, unless the county court withheld certain instructions called for on the other side which ought to have been given, that decision is conclusive.

The charge requested by the appellants, so far as it brought into view any points of law, involved in the case, was in fact given.  *Newbury* v. *Topsham*, 7 Vt. R. 407.   *Middletown* v. *Poultney*, 2 Vt. R. 437.   *Burlington* v. *Calais*, 1 Vt. R. 385.   *Boardman* v. *Bickford*, 2 Aik. R. 345.   *Royalton* v. *Bethel*, 10 Vt. R. 22.   *Monkton* v. *Panton*, 12 Vt. R. 250.

The appelles ought not to prevail in their application for a new trial ;—

1. Because the evidence alledged to have been discovered is cumulative, and

2. Because there was a want of due diligence in not having sooner discovered it.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—In this case there are exceptions to the proceedings of the county court, and also a petition for a new trial, on the ground of newly discovered evidence. It appears that, on application of the overseers of the poor of the town of Kirby, an order was made removing one Mary O. Goodhue to the town of Waterford, and the inquiry was as to the settlement of her father, Ephraim T. Goodhue, who, it appeared, had resided theretofore in Waterford. On the trial, it was attempted on the part of the town of Kirby to prove that, between November, 1801, and November, 1817, Ephraim T. Goodhue had resided in the town of Waterford more than one year, and was not warned out, and thereby gained a settlement under the act in relation to settlements, passed in 1801. It appears that, although it was proved that he owned land in Waterford, and resided there a portion of every year for a long period previous to the year 1814 or 1815, yet the jury, under the charge of the court, did not find, from the testimony introduced, a continuous residence for any one period of a whole year. The petitioners now set forth, that they have discovered evidence, which proves that he had acquired a settlement in Waterford under the act passed in 1797, which provided that every person who should purchase a freehold estate of the value of one hundred dollars, &c., and shall have occupied and improved it for one whole year, and also every healthy able bodied person, coming and residing in this state, and being of peaceable behavior, shall be settled in the town, where he shall have first resided for the space of one whole year. The affidavits show that this testimony is new-discovered, and also, unless contradicted, show a settlement under that act; and, unless the application is liable to some of the objections urged against it, entitles the party to the new trial prayed for.

In the first place, there does not appear to be any want of diligence in not procuring this testimony previous to the for-

mer trial. Goodhue had never resided in Kirby, and his deposition, which was used on the trial, as well as the other testimony, did not give any indications of his residence previous to 1801, and was not calculated to induce any inquiry as to any residence anterior to that period. The overseers of the poor could not, therefore, be negligent in not attempting to prove a fact of which they had no knowledge, and which they had no reason to believe or infer either from the examination of the pauper herself, her father, or any of the other witnesses.

In the second place, the testimony is not cumulative. Cumulative testimony is to the same fact litigated at a former trial, and upon which testimony was then given. The discovery of such testimony should never be the ground of granting a new trial, unless in some extraordinary cases, which are of a character so peculiar as to form an exception to the general rule. The facts litigated and in evidence at the former trial were in relation to a residence after 1801, and a settlement acquired under the act passed that year. The newly discovered evidence relates to a residence before that period, and a settlement acquired under the previous statute.

In the third place, the testimony, particularly the affidavits of two witnesses, is of so decisive a character as to show a settlement under the act of 1797, which must change the verdict unless the facts are controverted, and, of course, the application is not liable to the objection that the issue will yet be left doubtful.

It is, however, objected that, inasmuch as there is no equity between towns in relation to the settlement of paupers, no new trial should be granted in such cases. And it may be true that the courts would not interfere on light grounds to disturb a verdict, and that, in the exercise of their discretion, they might not interfere as they would in cases where the life, liberty or property of an individual was concerned. But inasmuch as there is no such equity between towns, they must be entitled to the benefit of the law, and the right between them is that the town where the law fixes the settlement should bear the burden of supporting the pauper. And if this cannot be settled by one trial, it must be settled by another, where the principles applicable thereto

warrant the granting a new trial. If this pauper is settled in Waterford, the law requires that it should be so adjudged. by the judicial tribunals, and no principle requires us to say that a verdict, obtained in *any way*, shall establish such settlement, when it is clear and apparent such verdict ought not to be retained by the party obtaining it, whether through accident, mistake, or fraud.

It is not necessary for us to pass on the exceptions, further than to say that when the law is correctly stated to the jury, as it was in this case, any remarks of the court, by way of illustration, do not furnish a ground to set aside the verdict unless they are obviously calculated to mislead.

The residence of a pauper, who is a single man, is at the place where he makes his home, and this is usually the place where he keeps a chest, if he has one, or his tools, and if he has land on which he works, intending to clear up and make a farm, works on it in the summer, and, in the winter, works out at other places, intending to return to his land, and has a boarding place and a place where he keeps his clothes, tools, &c., such must be considered as his home, whether an officer, having a writ to serve, would find such residence or not.

A new trial is granted, with costs to abide the event.