### .McDOUGALD'S ADM'R *vs.* DOUGHERTY.

[CREDITORS' BILL—BILL OF REVIEW.]

1. *When bill of review lies, for error apparent.*—On bill of review for error apparent, it is permissible to look at the pleadings, the minute of the testimony offered on the hearing, the decree of the chancellor, the accompanying opinion, in which he states the reasons on which his decree is based, and all the proceedings in the original cause, except the testimony; but an error in the opinion accompanying the decree will not support a bill of review, unless it affirmatively appears that such error renders the decree itself erroneous.
2. *When such bill lies for newly discovered evidence.*—Newly discovered evidence, relating to a fact which was in issue in the original cause, will not support a bill of review, when it is parol and simply cumulative.

APPEAL from the Chancery Court of Russell.

Heard before the Hon. JAMES B. CLARK.

THE original bill in this case was filed on the 30th May, 1851, by Edward Carey, as the assignee of the Bank of Columbus, Georgia, on behalf of himself and the other creditors of Daniel McDougald, deceased, against the personal representative and distributees of said McDougald, Seaborn Jones, and others. Its object was to enforce payment of certain debts due and owing to said bank by McDougald, out of assets belonging to his estate; to foreclose a deed of trust, or assignment, by which said McDougald conveyed certain lands, slaves, and other property, to said Seaborn Jones and R. B. Alexander, as trustees, for the benefit of his creditors; and to enjoin a sale of the property by the administrator, under orders of the probate court, and any interference with it by the said Seaborn Jones as trustee. The cause was brought to a hearing, on pleadings and proof, at the May term, 1855; and at the ensuing November term the chancellor delivered the following opinion and decree:

"This cause was heard at the last term, upon the pleadings and proof, and held for decree in vacation, or at this

26

term. The case is one of great importance, and many interesting questions have been presented and discussed by counsel, and most of them examined by me with great care; but, as the complainant must fail, for the want of proof of the execution of the deed of assignment from Daniel McDougald to Seaborn Jones and Robert B. Alexander, I have thought it not necessary for me to express an opinion on these questions.

"This deed purports to have been executed in Muscogee county, Georgia; but there is no evidence that it was ever registered in that State. The original deed is not produced, and it is intimated in the answers of Jones and McDougald that it was destroyed by said Daniel McDougald in his life-time. One witness, however, says that, after the death of said Daniel McDougald, on the application of Mrs. McDougald, in the court of ordinary in the county of Muscogee, for administration on the estate of her husband, to induce the court to fix the penalty of her bond at as small a sum as they could, said Alexander held up a paper, which he said was an assignment to him and Jones for the benefit of the creditors of McDougald generally; so that it would seem there was some uncertainty as to its destruction. A copy of what purports to be the deed is annexed to the bill; and the witness O'Neal, who was a deputy in the county court of this county, testifies, that the copy appended to the interrogatories propounded to him, (which, no doubt, is in the same words and figures as that attached to the bill,) is the copy of an original recorded by him and Simeon O'Neal. This record has annexed what purports to be the copy of the certificate of Thomas M. Kemp, as a justice of the peace of this county, of the acknowledgment of the deed of McDougald before him. This record shows, that the deed was witnessed by William Henry Watkins and John A. Norton, both of whom are proved to be dead; and the evidence also shows that Kemp and Alexander are both dead. There is no testimony to show whether Simeon O'Neal, who was principal clerk of the county court of this county at the time the record purports to have been made, is dead; and no reason is shown why his deposition was not taken. Nor is there any evidence that either the pro-

bate office of this county, or the papers of Alexander, have been searched for the original; nor is the handwriting of McDougald, either of the subscribing witnesses, or Kemp, proved; nor that the latter was a justice of the peace; but the only fact we have certainly established is, that at the date of the record, a paper purporting to be such deed was registered. Who brought it to the office for that purpose, or who took it away, if any one, is wholly unproved. Is this sufficient to show that such a deed was executed? The record of a deed of this kind is mere notice, and cannot dispense with proof when offered in evidence. The certificate of the justice of the peace was sufficient to authorize its registration; but it can have no [other] effect.—*Desha, Sheppard & Co. v. Scales,* 6 Ala. 656; Cowen & Hill's Notes, 1220. Had Kemp been alive, he would have been competent to establish the deed, as it was acknowledged before him. But there is no law which makes his certificate evidence, even if it had been proved that he was a justice of the peace, and that he had in fact made such a certificate; because the certificate of a justice of the peace, to such a deed, is only evidence for the single purpose of registration.

"There can be no doubt, that the bill filed in this court by Seaborn Jones, against Wilkerson, is evidence against him, and would be sufficient to establish the execution and delivery of the deed, was he the only defendant, because it is an admission by him under oath; and I am inclined to think, that an admission may be extracted from the answers of Mrs. McDougald and Duncan McDougald, that such deed was executed by Daniel McDougald. But there is no such admission in the answer of Wilkerson, and no one can admit for the minor defendants. The admission of no one defendant can be used against the others in this case, to deprive them of their legal rights.—Cowen & Hill's Notes, 170, 172.

"The foregoing remarks are all that are necessary to a disposition of the cause. I will say, however, that the proof is defective as to the minority of the infant defendants. I make it a rule never to decree against a defendant, where the bill states that he is a minor, without proof of

that fact. I have considered whether it was my duty to dismiss this bill without prejudice, and am satisfied that I ought not. The execution of the deed could have been proved by the defendant Jones. The defendants objected to the statute of the legislature of Georgia, passed December 23, 1843, (and compiled in Cobb's New Digest, 120,) being offered in evidence; but, as they themselves subsequently offered in evidence the same statute, I presume the objection is not relied on. If, however, it is, it will be overruled. They objected, also, to the bill filed by the defendant Jones, against the defendant Wilkerson, being offered in evidence; but, as I consider it legal evidence against Jones, the objection will be overruled.

"The register will enter the following decree:

"This cause, coming on to be heard, at the last term of this court, upon the pleadings and proof, was argued by counsel, and then held up for consideration and decree in vacation, or at this term; and thereupon, on consideration of the premises, it is ordered, on motion of the *complainants* to dismiss the amended or supplemental bill, filed May 5, 1852, *be allowed;* and that the motion of the defendants to reject certain portions of the testimony offered by complainant, be overruled. And thereupon it is further ordered, adjudged, and decreed, that the injunction granted in this case, to restrain the defendants, Seaborn Jones and Jesse Wilkerson, from proceeding to sell any portion of the lands mentioned, be, and the same is hereby, dissolved; and that the said bill of complaint be dismissed out of this court. And it is further ordered, that the dissolution be certified to the probate court of this county; and that the complainant pay the costs of this suit, to be taxed by the register, for which execution may issue. And it is further ordered, that in case the complainant should take an appeal from the foregoing decree, and desire the same to operate as a restoration of the injunction thereby dissolved, that he enter into bond before the register, with sufficient sureties, payable to the defendants Jones and Wilkerson, in the sum of one thousand dollars, conditioned as well to prosecute the appeal to effect, and satisfy such judgment as the supreme court may render against him in the premises, as

McDougald's Adm'r v. Dougherty.

to pay all damages which the defendants Jones and Wilkerson, or either of them, may sustain by the restoration of the injunction in this cause by said appeal, if the decree dissolving the same shall be affirmed by the supreme court."

On the 28th March, 1856, the complainant in the original bill applied to the chancellor, by petition under oath, for leave to file a bill of review, which accompanied the petition; and leave having been granted, the bill of review was filed on the 10th April, 1856. The following allegations of the bill of review show the grounds on which it prayed relief:

"Your orator now charges and avers, that on the evening of the same day on which said final decree was delivered, your orator discovered, for the first time, a fact which, as he is advised and believes, would have changed the result of said cause, and which, after the exercise of the greatest diligence on his part, he failed to discover earlier. The fact thus discovered is, that a deed of assignment, bearing the true and genuine signature of said Daniel McDougald, deceased, was lodged in the probate court of Russell county, for registration, duly certified; and that, after the registration of the same, the original genuine deed of assignment was taken by Thomas H. Burch, then acting as deputy-clerk in the office of the probate county court, out of the said office, and delivered by him to the said Seaborn Jones, in the city of Columbus, who paid him the fee for the registration of said deed; all of which will appear by the written affidavit of said Thomas H. Burch, hereunto appended, marked," &c. "Your orator further charges, that, since he has discovered the facts above stated, he has caused diligent search to be made in the office of the probate court, to ascertain whether any other deed, such as that mentioned by the said Burch, has been admitted to record in said office; and that no such deed, but the one spoken of by the said Burch, a true exemplification of which was read in evidence on the trial of said cause, could be found; that being the only deed of the said Daniel McDougald, making an assignment of his property to said Jones and Alexander, or to any one else, on record in the said office. Had this fact come to the knowledge of your orator before the

trial, he would have been able to show the genuineness of the said deed of assignment; he could have traced the original to the possession of said Jones, and, on his failure to produce it, the exemplification (the original being lost, or out of the jurisdiction of the court) would have been the best evidence the nature of the case admitted of, and of necessity competent, and, as he is advised, coupled with the evidence newly discovered, sufficient evidence to prove said assignment."

" Should your honor deem the newly discovered fact, and the evidence in support thereof, which was not, and could not have been, known to your orator, after the most extraordinary diligence and effort, before the trial and final decree, insufficient to entitle him to review said decree; then he would respectfully assign, and does assign, as grounds of review and reversal thereof, the following, which he submits, as he is advised, appears on the record : 1st. Proof of the minor heirs named as defendants in the bill was taken before the master, to whom the question of their names and ages was referred by decretal order; and he reported, that they were proved to be minors, but their precise age he had no means of ascertaining; which report remains unexcepted to, and not in any way set aside. 2. That said grantor, being dead, as also one of the trustees named in the said deed of assignment, as well as the witnesses who attested the same, and the justice of the peace before whom it was acknowledged; and the surviving trustee being a party to the bill, and swearing in his answer that he had made search, or made inquiry for it, and believes said deed to be lost; and an exemplification from the records of the probate court having been admitted in evidence without objection, and coupled with the proof of the deputy clerk who recorded it, as to its being a proper registration from the original; and also with proof that, since the death of said McDougald, the deceased trustee set up such deed as valid, as a reason for lessening the bond of the administratrix,— it is submitted that it is legitimate and sufficient proof to warrant a decree for the complainant."

The defendant Wilkerson filed an answer to the bill of

review, in which he incorporated a demurrer for want of equity; and at the November term, 1858, he moved to dismiss the bill for want of equity, as well as on the denials and statements contained in his answer. The chancellor overruled the demurrer, and the motion to dismiss; holding that the bill contained equity, so far as it sought relief on the ground of error apparent on the record, but not on the ground of newly discovered evidence. His written opinion, filed with the decree, after disposing of the question presented as to the equity of the bill on the ground of newly discovered evidence, was as follows:

"This brings me to the consideration of the question, whether there is error in the decree. In England, this question always comes up on demurrer; but I see no reason why it should not be raised by any motion which involves the equity of the bill. In England, the decree always states the substance of the testimony upon which it is pronounced: but, with us, and indeed in most, if not all the States of the Union, including the United States courts, neither the pleadings nor the testimony is stated; and, while there is some contrariety of opinion, as to the effect this course has upon the right to review for error apparent, I think the view taken by Judge Ormond, in the case of *P. & M. Bank v. Dundas*, (10 Ala. 667,) is correct; that is, that the chancellor, in reviewing, is to look to the pleadings and proof in the cause. But, while the pleadings and proof on file can be properly looked to, on a question of error apparent, it must be obvious that the chancellor's reasons for his decree, accompanying it, but not embraced in it, cannot be the foundation for an assignment of error. In every case, the question must be, is the decree wrong upon the pleadings and proof? For instance, as in this case, where the bill was dismissed on hearing, the question must be, whether the evidence was sufficient to show that the plaintiff was entitled to any relief; because, if it was, the decree is erroneous. In deciding this question, on motion to dissolve the injunction for want of equity, the chancellor may look into the original bill, the answers, and the testimony; but he must take the statements of that case, and of the proof, from the case made by the bill of review.

"The plaintiff assigns two grounds of review for error apparent : 1st, that there was sufficient proof of the infancy of the defendants; and, 2d, that the proof of the deed of assignment was sufficient. It may be a question, not free from difficulty, to determine what proof, if any, is necessary to be made on the part of the complainant, of the infancy or heirship of a defendant; and while the decree on the original bill clearly did not depend on the fact of the infancy of the heirs of Daniel McDougald, still I think that, if it had, it would have been erroneous. If any proof was necessary, the inquiry of the register was sufficient. The decision of the case, however, did not turn upon this, but upon the amount of proof of the execution and delivery of the assignment. From the statements in the bill, of the proof offered, I think it apparent that it would have been retained, and the relief granted, if I had not considered the proof of the execution and delivery of the deed defective. I will not, however, on this motion, undertake to determine what effect is to be given to the statutes and decisions in Georgia, or to the information in the nature of a *quo warranto* against the Bank of Columbus, as they are not now before me. Indeed, this error, as to the proof of the execution and delivery of the deed of assignment, has been simply presented, without being pressed on my consideration. It is, however, too important to be passed over without consideration. It involves the question, whether the court can, of its own motion, where a party has suffered secondary evidence to be offered without objection, take upon itself to decide, after the proofs are closed, and it comes to consider what judgment ought to be rendered, that no sufficient predicate had been laid for the introduction of such evidence, and declare it insufficient, and, on that ground, dismiss the bill.

"The law must certainly be considered as settled, that if secondary evidence is offered and received, without objection at the time, the opposite party is precluded from afterwards raising the question of its sufficiency.—Cowen & Hill's Notes, 200, 550, 1060, 1213, and authorities there cited; also, *Bartol v. Calvert*, 21 Ala. 42; *Allen v. Smith*, 22 Ala. 416 ; *Thomas v. Henderson*, 27 Ala. 523. It follows from this, that, if the party is concluded by not making the

McDougald's Adm'r v. Dougherty.

objection at the proper time, the court is also concluded. Of the correctness of this view there can be no doubt; and the only question which can arise in this case, under this rule, is, whether the court, where there are minor defendants, is not constrained to take the objection for them at any stage of the case. The doctrine of the court is, that an infant defendant cannot be guilty of *laches;* nor ought any admission or waiver to be made by his guardian *ad litem,* so as to authorize a decree against him; nor can there be any decree against him by default. It is the duty of the court, moreover, to see that the rights of an infant defendant are not prejudiced or abandoned by any admission of his guardian *ad litem.* Still, infants are as much bound by the conduct of those who manage their suits, or defend for them, as adults are, provided such management is *bona fide;* as where the solicitor for the infant consented that the testimony should be taken by affidavit, instead of upon interrogatories; or where he waived an issue of *devisavit vel non,* to which the infant was entitled. And, while a guardian *ad litem* ought not to consent to a decree, without a reference; yet, where a decree is pronounced without any reference, it is binding upon the infant. Indeed, infants are as much bound by absolute decrees as persons of full age, except that they have a day to show cause against the decree.—1 Dan. Ch. Pr. 203–20; 1 Barbour's Ch. Pr. 148; Adams' Equity, 363; 3 Greenl. Ev. § 278.

"The doctrine of the court, then, is, that it is the duty of the court to interpose any objection that presents itself on behalf of a minor defendant, whether his guardian *ad litem* or solicitor waives it or not. But, has the court more latitude as to time, than the solicitor has? Can the chancellor, without raising any objection to the testimony when offered, reject it when he comes to pronounce his decree, and thereby deprive the complainant of relief, when, if the objection had been made at the offering of the testimony, it might have been obviated? I certainly think he cannot. The right of the court to watch over the interests of minor litigants cannot, and ought not to be questioned? But there must be, in the progress of every cause, where an infant is a party, a time when the chancellor must bind him

to the case, or *defend* what may have been done by those who have had the care and conduct of the litigation on his behalf; and such time in this cause must be held to have commenced, or the right of the chancellor to raise objections to the testimony to have terminated, when the plaintiff offered a copy of the deed, instead of the original. When the copy was offered, the chancellor, as well as the guardian *ad litem* or solicitor, could have objected, that there was no sufficient predicate laid, or that the execution of the deed had not been proved. But no such objection was then made. The court, I apprehend, could not afterwards, of its own mere volition, when it came to render its decree, take the ground, that the deed was not sufficiently established to authorize a decree. Consequently, if the case was made out by the plaintiff on all the other grounds, so as to authorize a decree for him, the requisition of proof of the execution of the original deed, when none had been required at the time the copy was offered, would be erroneous; and the decree ought to be reversed and annulled. And, while I cannot, at this stage of the case, and on this motion, decide that the plaintiff made out his right to relief upon all the other grounds of his case; still, as I am under the impression that he did show his right to sue, and to have the benefit of the deed to the extent of the debt claimed, I shall overrule the motion to dissolve the injunction for want of equity, as all these questions can be properly raised and argued on the demurrer to the bill. I shall also overrule the motion to dissolve the injunction on the denials of the answer, as the defendant has not denied, and, indeed, could not deny, the equity on which the bill is retained."

The chancellor's decree on the final hearing, which was rendered at the same term, and was not accompanied by any written opinion, was as follows: "This cause coming on to be further heard, as well upon the errors alleged in the decree sought to be reviewed, as upon the pleadings and proof offered in the cause, was submitted for decree without argument; and the court being satisfied that the original bill, upon which the decree sought to be reviewed was rendered, contains a case for the equitable interference

of the court, and that the court erred in its decree on said original bill, in deciding that a copy of the deed of trust of Daniel McDougald to Seaborn Jones and Robert B. Alexander, received in evidence on the hearing of the original cause without objection, was not sufficient to show that such a deed was executed,—it is therefore ordered, adjudged, and decreed, that the demurrer of the defendant Wilkerson be overruled, and that the decree sought to be reviewed be reversed and annulled for the error aforesaid, but not on the ground of newly discovered testimony, and that the original cause be restored to the docket and reheard."

From this decree the defendant Wilkerson sued out an appeal, returnable to the January term of this court, 1860. Pending the appeal, Carey, the complainant in the original bill and in the bill of review, died; and the case was revived, on motion, against William Dougherty, as his successor in the trust.—See 38 Ala. 320, 534.

GOLDTHWAITE, RICE & SEMPLE, and GEO. D. HOOPER, for appellant.

W. P. CHILTON, W. DOUGHERTY, L. E. PARSONS, and D. CLOPTON, contra.

STONE, J.—In the original case between these parties, the decree was pronounced, dismissing the complainant's bill, at the November term, 1855. In March, 1856, the complainant petitioned the chancellor for leave to file a bill of review, accompanying his petition with the bill he proposed to file; and the chancellor made an order, granting the prayer of the petition. The petition for leave to file the bill was sworn to by the complainant, and sets forth the grounds on which the claim is based. In form, these preliminary proceedings conform to the rule.—Code, §§ 2952–3; P. & M. Bank v. Dundas, 10 Ala. 669; Massie v. Graham, 3 McLean, 43; Story's Eq. Pl. § 420. The bill of review rests its claim to relief on the two grounds of error apparent, and newly discovered testimony. The chancellor decreed in favor of complainant on the first ground, and denied him relief on the second.

The principles which govern bills of review grow out of the ordinance of Lord Bacon, which constitutes the foundation of the system, and, it is said, has never been departed from. It is as follows: "No decree shall be reversed, altered, or explained, being once under the great seal, but upon a bill of review; and no bill of review shall be admitted, except it contain either error in law, *appearing in the body of the decree,* without farther examination of matters of fact, or some new matter which hath arisen after the decree, and *not any new proof which might have been used when the decree was made.* Nevertheless, upon *new proof that is come to light after the decree made, and could not possibly have been used at the time when the decree passed,* a bill of review may be grounded by the special license of the court, and not otherwise."—*Dexter v. Arnold,* 5 Mason, 310.

In the English chancery, it is the rule to embody in the decree all the material facts of the case. This does not necessarily, or even generally, include the *evidence* which establishes the facts; but the conclusions of the chancellor, the facts found. These facts may consist of admissions found in the pleadings, proofs furnished by documentary evidence, or convictions, either positive or inferential, which are the result of parol proof. All these facts are presented in the body of the decree; and the rule there is, that the error which will justify a bill of review, must be apparent in the body of the decree. The testimony cannot be looked to, either for the purpose of correcting any statement of fact found in the decree, or of supplying any fact omitted from the statement. Hence, it is strictly true that, in England, the ordinance of Lord Bacon has never been departed from. See *Perry v. Philips,* 17 Vesey, 176; *O'Brien v. Connor,* 2 Ball & Beatty, 152; *Haig v. Homan,* 8 Clark & Fin. 370; *Case of Fanshaw,* Hard. 174; *Combs v. Proud,* 1 Cas. in Chan. 54; *Mellish v. Williams,* 1 Vern. 166; *Trulock v. Roby,* 15 Sim. 277; Mitf. Ch. Pl. 84; 3 Dan. Ch. Pr. 1727; Story's Eq. Pl. § 405.

But, in this country, the practice has never prevailed of embodying or expressing the facts in the decree; and out of this has grown a modification of the English rule, so as to accommodate the remedy, as far as prac-

ticable, to the change. In South Carolina, it is held, that a bill of review will not lie for error apparent; for, as the decree can only be looked to, and that contains no statement of facts found, there can be no such thing as error apparent.—See *Manigault v. Deas*, 1 Bail. Eq. 296; *Perkins v. Lang*, 1 McCord's Ch. 30. So, in Tennessee, it was ruled that, as a statement in the body of the decree, of the facts on which it rests, furnishes the only evidence which, under the rule, can be looked to on the question of error apparent, the omission of such statement is itself error apparent, which will sustain a bill of review.—See *Burdine v. Shelton*, 10 Yerger, 41. This decision gave rise to a statute in Tennessee.—See *Eaton v. Dickinson*, 3 Sneed, 402. So, in Ohio, it was decided that, if no statement of the facts was put in the decree, the whole record of the former suit, including the evidence, was open to examination on the question of error apparent.—See *Ludlow's Heirs v. Kidd*, 1 & 2 Ohio Rep. 463; *Strader v. Byrd*, 7 *ib.* 184; *Stevens v. Hay*, 15 *ib.* 313.

If the question before us were an open one in this State, we would not feel inclined to adopt the rule, either of South Carolina, Tennessee, or Ohio. But it is not an open question.—See *Caller v. Shields*, 2 Stew. & Por. 424; *P. & M. Bank v. Dundas*, 10 Ala. 667.

The rule, as modified and acted on in the American courts, is not always expressed in the same language. It has been decided that, on the question of error apparent, the court is authorized to consult and examine the "bill, the answer and other pleadings, and the decree;" (*Whiting v. Bank U. S.*, 13 Peters, 14;) "the bill, answers, and other proceedings;" (*Dexter v. Arnold*, 5 Mason, 311;) "the bill, the proceedings thereon, and the decree;" (*Turner v. Berry*, 3 Gilman, 543;) "the pleadings and proof, to ascertain the facts on which the decree is based."—*P. & M. Bank v. Dundas*, 10 Ala. 667.

Mr. Story, in his Equity Pleadings, (section 407,) says: "For the purpose of examining all errors of law, the bill, answers, and other proceedings are, in our practice, as much a part of the record before the court, as the decree itself; for it is only by a comparison with the former, that the

correctness of the latter can be ascertained."—See, also, Mitford's Ch. Pl. 84, and notes; 3 Dan. Ch. Pr. 1727, and notes; 4 Bouv. Ins. 347. The following authorities are confirmatory of this view : *Goodhue v. Churchman*, 1 Barb. Ch. 597; *Getzler v. Saroni*, 18 Ill. 517; *Randon v. Cartright*, 3 Texas, 268; *Kennedy v. Georgia State Bank*, 8 How. U. S. 609; *Webb v. Pell*, 3 Paige, 371; *Foy v. Foy*, 25 Miss. 212.

All the cases, English and American, except those from Ohio, agree in this, that on bill of review for error apparent, judgments or inferences of fact cannot be tried or retried. If the chancellor, on the first trial, has decided that a fact exists, or does not exist; or, if the decree be silent on the question of what the evidence, or any part of it, proves, or fails to prove,—then such evidence cannot be looked to or considered on the question of granting a review of a decree enrolled. " You are not at liberty," says Mr. Justice Story, " to go into the evidence at large, in order to establish an objection to the decree, founded on the supposed mistake of the court in its own deductions from the evidence."—*Whiting v. Bank U. S.*, 13 Peters, 14. " From the very nature of the proceeding" [bill of review], " it is manifestly necessary to state all of the proceedings in the original cause, except the evidence on which the court found the facts on which it proceeded to render a decree. Upon a bill of review, the sufficiency of the evidence to establish the facts, as found, cannot be controverted. It is not of a misjudging of the facts that a party can complain, but for an improper determination of the law." *Turner v. Berry*, 3 Gilman, 544. Facts may be looked to, but not the evidence which proves or disproves those facts. See authorities *supra;* also, *Dougherty v. Morgan*, 6 Monroe, 152; *Barnum v. McDaniels*, 6 Verm. 179; *Evans v. Clement*, 14 Ill. 208; *Wiser v. Blachly*, 2 Johns. Ch. 491; *Burdine v. Shelton*, 10 Yerger, 41–45.

Lord Eldon, in the case of *Perry v. Philips*, (17 Vesey, 178,) while stating that the error, which will justify a bill of review, must be apparent, and of matter of law, uses the remark, that "there is a great distinction between error in the decree, and error apparent; the latter does not ap-

ply to merely erroneous judgment." Whether this distinction, which does exist, is expressed with that clearness which will enable the profession to comprehend it readily, is not for us to determine. Lord Manners, in the case of *O'Brien v. Connor*, (2 Ball & Beatty, 154,) was more happy. He says, the ground of a bill of review must be " an error in point of law; that is, an erroneous result drawn by the court from the facts apparent on the record."

What Lord Eldon really meant by the expression, " erroneous judgment," is shown by his own decisions, and by all the authorities, to be what we have stated above; namely, that it is not permissible to look at the testimony, with a view of determining whether the chancellor scanned it properly, allowed it proper weight, or drew correct inferences from it. These are questions which arise on appeal, but not on bill of review. In the latter, the chancellor deals with record facts, not the evidence which goes to prove them.

It is also said, that the error apparent, which will uphold a bill of review, must be an error of law. This is true; but it is doubtful if it be sufficiently definite. It may consist of error of law in the ordinary acceptation of that expression; such, for instance, as misjudging and misapplying the law to the facts stated; an erroneous and illogical conclusion from given premises. Or it may consist of an inadvertence; such as mistaking one name for another name, or one thing for another thing. This sometimes springs from a confused understanding of the names of parties, or of the description of property in controversy.

There are some old decisions, which confound the expression, "error apparent," with *palpable error*, or inadvertence; and the tendency of these decisions is to confine the relief for *error apparent* to that class of accidental, or inadvertent errors, on which the chancellor does not appear to have exercised his judgment or reasoning powers.—See *Wiser v. Blachly*, 2 Johns. Ch. 491; *Caller v. Shields*, 2 Stew. & Por. 417; *Williams v. Murphy*, 1 Porter, 40. These decisions were probably caused by the example of error apparent given by Lord Eldon, in the case of *Perry v. Philips*, 17 Vesey, 178. It is doubtful if this ever was the correct

rule.—See *Combs v. Proud,* 1 Cas. in Ch. 54; *Mellish v. Williams,* 1 Vern. 166.

But, whatever the rule may have been originally, the modern decisions have clearly defined it to be what we have declared above. In *Evans v. Clement,* (14 Ill. 209,) the court, speaking of the rule, said, it "has now become well settled, that the court will, on such a bill, reverse or revise its own decree, for an erroneous application of the law to the facts found, whenever a court of appeals would do so for the same cause." The following authorities, in the statement of the principle and in the relief granted, sustain our view:—*P. & M. Bank v. Dundas,* 10 Ala. 667; Mitf. Eq. Pl. 84; *Bank U. S. v. Ritchie,* 8 Peters, 140; *Tomlinson v. McKaig,* 5 Gill, 278; *Hollingsworth v. McDonald,* 2 Har. & Johns. 238; *Alexander v. Slavers,* 7 B. Monroe, 355; *Whiting v. Bank U. S.,* 13 Peters, 14; *Barnum v. McDaniels,* 6 Verm. 179; *Randon v. Cartright,* 3 Texas, 268; *O'Brien v. Connor,* 2 Ball & Beatty, 154; *Trulock v. Robey,* 15 Sim. 277.

Our predecessors, in the case of *P. & M. Bank v. Dundas,* (10 Ala. 667,) fell into a verbal inaccuracy, when they said that the court, on bill of review, could look into the *proof,* to ascertain the facts upon which the decree was based. They could not have meant the testimony in the general sense of that term; for that would have been contrary to what they had just announced was the rule—namely, that the bill would not lie "for error merely in the judgment." It also stands opposed to all the authorities on the subject, English and American, except the decisions in Ohio. What they meant must have been the pleadings and proceedings in the cause; for facts established by admissions in the pleadings, or shown to exist in the proceedings in the cause, are as clearly part of the record within the American rule, as if they were recited in the decree.

Several able and well-considered opinions discuss facts of the class stated above, and make them the basis of relief. In the case of the *U. S. Bank v. Ritchie,* (8 Peters, 140,) Chief-Justice Marshall, delivering the opinion, consulted and commented on all the pleadings, the return on the process, the order appointing the guardian *ad litem,* the decree,

the order appointing an auditor to receive the proof of claims, the order appointing a trustee to make sale of the property, and the report of the sale made by the trustee; and he based his decree on the errors apparent in all of these. In *Alexander v. Slavers*, (7 B. Monroe,) the court consulted the pleadings, and learned therefrom that proper parties were not before them; and, on this ground, entertained a bill of review for error apparent. In the case of *Dexter v. Arnold*, (5 Mason, 316,) the court considered the report of the master, exceptions to it, and the decree upon it. In the case of *P. & M. Bank v. Dundas*, (10 Ala. 667,) the court considered and commented on the report of the master, in determining the question of error apparent. See also, on this point, Story's Eq. Pl. § 420; *Hollingsworth v. McDonald*, 2 Harris & Johns. 238; *Turner v. Berry*, 3 Gilman, 543; *Randon v. Cartright*, 3 Texas, 268.

In the case of *Hollingsworth v. McDonald, (supra,)* the court stated, as one ground why relief was withheld on the bill of review, that certain deeds, which were the foundation of the original suit, were not brought before the court as "part of the proceedings" of the former suit.

In the case of *Tomlinson v. McKaig*, (5 Gill, 278,) the court used the following language: "In this State, the English practice of stating the proceedings in the decree has not prevailed; and to make the bill of review as effective as it is in the English court of chancery, the proceedings in the cause should be the subject of revision on a bill of review, in the same manner as if they were stated on the face of the decree. Unless such an examination was allowed, few cases would occur in which bills of review could effect the object intended to be attained by them." This language, which, in the main, seems reasonable, is perhaps expressed a little too strongly. We have shown above that, on the question of decreeing in favor of a bill of review, the testimony taken in the original suit cannot be consulted on the allegation of error apparent; in other words, that such testimony cannot be looked to, either for supplying a fact not stated, or of disproving any statement of fact found in the proceedings. Now, when it is remembered that, under the English rule, the decree contains a

statement of the facts—as well those facts which are proved by the testimony, parol and documentary, as those established by the pleadings and the after proceedings—it is manifest that, under the American rule, the relief afforded by bills of review for error apparent is much less extensive than that which is administered under the English rule.

We are not able to fully harmonize all the American authorities on this question. We think, however, that a decided preponderance of them, both in numbers and ability, establishes the proposition, that on the inquiry of error apparent, which will uphold a bill of review, the court is permitted to examine the whole record of the former suit—the entire proceedings—except that which may be classed as testimony.—See authorities *supra;* also, *Barnum v. McDaniel,* 6 Verm. 179; *Evans v. Clement,* 14 Ill. 208; *Getzler v. Saroni,* 18 Ill. 517.

We have encountered some difficulty in determining, satisfactorily to ourselves, whether, under the denomination of *record and proceedings,* we may not, on bill of review for error apparent, examine evidence that was submitted in the original cause, and which is strictly documentary and self-proving. We find no authority for such discrimination; and while there are doubtless many cases, (and this may be one of them,) in which such practice could work no injustice, the uncertainty of any rule we might lay down, and its liability to abuse, deter us from making any attempt to extend a principle, which, under our liberal system of appeals, has become in a great degree unnecessary. It is not without the range of possibility that a deed or mortgage, which proves a cardinal fact in a cause, is self-proving under our statutes (Code, § 1275); yet the record may contain parol proof which satisfies the chancellor that such deed or mortgage is wholly invalid as a foundation for relief. Now, suppose that, in such case, the chancellor dismisses the complainant's bill, without stating the facts on which his decree rests. In such case, if we look at the pleadings, the documentary, self-proving evidence, and the proceedings and decree, and discard from our consideration the parol proof, the record will, in all probability, be reversible for error apparent.

McDougald's Adm'r v. Dougherty.

Without inquiring whether other cases might not arise, which would present the liability of any such rule to abuse, in a light equally glaring, we hold that documentary evi-dence, even though self-proving, is not, of its own force, examinable on bill of review for error apparent. This rule embraces all record and documentary evidence, which, to entitle it to consideration, must be offered in evidence, and of which a note is required to be made on the minutes, under the 71st rule of chancery practice.—See 24 Ala. XV. It does not embrace exhibits, the *factum* and legal continuing validity of which are admitted by the pleadings; for they stand in the category of facts stated on the record, and are not the subject of proof or testimony.

There appears to be no uniform rule, in the American courts, on the subject of the form of decrees in chancery. Many chancellors embody, in one continuous order, the discussion of points of evidence, and its credibility and weight—a statement, more or less complete, of the facts found—the arguments, both of fact and of law, on which the decree is based, and the decree itself. Such seems to have been the rule with Chancellor Walworth, and with the chancellors of South Carolina, and of other States. The form adopted by Chancellor Kent is not clearly shown in the reports; but he probably made no separate decree, other than the entry by his clerk or register of the decree which he sketched in his opinion.

In this State, the practice of chancellors has varied; some following the plan which seems to prevail in South Carolina, while others have separated the decree from the opinion; and yet others have pursued the plan of simply stating results, without any statement of facts, or of argu-ments, to support them. But, whether the opinion and de-cree be found in one order, or in separate orders, we believe it may be affirmed as universally true, that the opinion, if one be delivered, contains premises and arguments, which, in the mind of the chancellor, tend to sustain the conclu-sions expressed in the decree. The deductions and state-ments of fact, made in the opinion, are as much the solemn and deliberate action of the chancellor, as the decree itself. We are not able to perceive the reason for a rule, which

hinges the admissibility of solemn statements of fact made
by the chancellor, on the accident or habit which may
cause him to place his facts and his decree—his premises
and his conclusions—in one order, or in two orders.

With the explanations offered above, we adopt the rule, that
on the question of error apparent, that will justify a bill of
review, it is permissible to consult all the *facts* which are
apparent in the pleadings, in the process, and its service,
in orders, reports confirmed, and opinions and decrees of •
the chancellor.

In the original suit between these parties, the chancellor
dismissed the complainant's bill, on the single ground that
the complainant had not furnished sufficient evidence
of the execution of the deed of assignment from Daniel
McDougald to Jones and Alexander. The original deed,
as we learn from the opinion, was not produced; and what
purports to be a copy was attached to the bill as an exhibit.
Aside from the fact that some of the defendants were
infants, the answer of at least one adult defendant failed
to admit the execution of the deed of assignment. This
rendered it necessary that the complainant should prove
its execution. The precise ground taken by the chancellor,
in disposing of the original cause, is stated in the opinion
which accompanied his final decree. In that opinion are the
following statements :

"Many interesting questions have been presented, discussed
by counsel, and most of them examined by me with great
care ; but, as the complainant must fail, for want of proof of
the execution of the deed of assignment from Daniel McDou-
gald to Seaborn Jones and Robert B. Alexander, I have
thought it not necessary for me to express an opinion on other
questions. This deed purports to have been executed in
Muscogee county, Georgia ; but there is no evidence that
it was ever registered in that State. The original deed is
not produced," &c.

After alluding to certain testimony, which left on the
mind of the chancellor a doubt whether the original assign-
ment had or had not been destroyed, the chancellor
proceeds : "A copy of what purports to be the deed is
annexed to the bill; and the witness O'Neal, who was a

deputy of the clerk of the county court in this county, testifies, that the copy appended to the interrogatories propounded to him, (which, no doubt, is in the same words and figures of that attached to the bill,) is the copy of an original recorded by him and Simeon O'Neal. This record has annexed what purports to be the copy of the certificate of Thos. M. Kemp, as a justice of the peace of this county, of the acknowledgment of the deed of McDougald before him. This record shows that the deed was witnessed by William Henry Watkins and John A. Norton, both of whom are proved to be dead. There is no testimony as to whether Simeon O'Neal, who was the principal clerk of the county court of this county at the time the record purports to have been made, is dead; and no reason is shown why his deposition was not taken. Nor is there any evidence that either the probate office of this county, or the papers of Alexander, have been searched for the original; nor is the hand-writing of McDougald, either of the subscribing witnesses, or Kemp, proved; or that the latter was justice of the peace. The only fact which we have certainly established, is, that at the date of the record, a paper purporting to be such deed was recorded. Who brought it to the office for that purpose, or who took it away, if any one, is wholly unproved. Is this sufficient to show that such a deed was executed? The record of a deed of this kind is mere notice, and can not dispense with proof when offered in evidence. The certificate of the justice of the peace was sufficient to authorize its registration; but it can have no effect [as evidence].—*Desha, Sheppard & Co. v. Scales*, 6 Ala. 356; Cowen & Hill's Notes, 1220. Had Kemp been alive, he would have been competent to establish the deed, as it was acknowledged before him. But there is no law which makes his certificate evidence, even if it had been proved that he was a justice of the peace, and that he had in fact made such a certificate; because the certificate of a justice of the peace to such a deed is only evidence for the single purpose of registration."

It is true, as stated by the chancellor, that there was no statute applicable to this case, which made the certificate of the justice of the peace evidence of the execution of

a deed like the one which is the foundation of this suit. The original suit—the one in which he pronounced the decree from which we have quoted—was pending on the 17th January, 1853, when the Code became operative; and hence the proceedings in the original cause were not affected by the provisions of that body of laws.—Code, § 12; *Hiscox v. Hendree*, 27 Ala. 216. The law is now changed (Code, § 1275); but, in determining the question of the admissibility of the deed of assignment, the chancellor was governed by the old law, which did not make a mortgage, or other conditional conveyance, acknowledged and re- corded, evidence without proof of execution.—Clay's Digest, 153, § 7 ; *ib.* 154, § 17 ; *ib.* 255, § 2.

In ruling that it was necessary that proof should have been furnished that Thomas M. Kemp was a justice of the peace, the chancellor erred. The courts judicially know that he was a justice of the peace in Russell county at that time.—See *Ragland v. Wynn*, 37 Ala. 32 ; *Doe v. Kelly*, 28 Ala. 181 ; *Ingram v. State*, 27 Ala. 20 ; 1 Greenl. Ev. § 6 ; *Despan v. Swindler*, 3 Mart. (La. N. S.) 706 ; *Follain v. Lefevre*, 3 Rob. (La.) 14 ; *Lessee of Willick v. Mills*, Peters' C. C. 429 ; *Hawks v. Kennebec*, 7 Mass. 461 ; *Ripley v. Warl ren*, 2 Pick. 596.

In the decree, affirming the legal sufficiency of the bil- of review, the chancellor decided that he had committed an error of law in the decree in the original cause, in this, that he had, *ex mero motu*, rejected the deed of assignment as not proved, (the evidence, as he said, being only second- ary,) when he should have allowed the evidence, offered as it was without objection. It is probably true that the chancellor, if this question was properly before him, did rightly rule that he should not, himself, have raised this question on the former trial. Secondary evidence, if not objected to, is good, even against infant defendants, if they have been represented by counsel, and there does not ap- pear in the record any evidence that their interests have been neglected.—See 1 Dan. Ch. Pr. 95 ; *ib.* 203–5 ; *Tillot- son v. Hargrove*, 3 Mad. 495 ; *Wall v. Bushby*, 1 Bro. C. C. 488 ; *Pearson v. Darrington*, 32 Ala. 245 ; *Mills v. Dennis*, 3 Johns. Ch. 368 ; *Knickerbocker v. Defreest*, 2 Paige, 305.—

But see *Clark v. Gilmer*, 28 Ala. 265; *Johnston v. Shaw*, 31 Ala. 594.

But how did the chancellor know, while pronouncing on the sufficiency of the bill of review, that his decision in the original cause had been made *ex mero motu?* Evidently, he could not consult his own personal recollection. He was allowed to look only at the former record for information on which to act. To permit the chancellor, in such a case, to consult his own recollection, would be to lay down one rule for cases where the same chancellor presides at both trials, and a different rule where the two trials are had before different chancellors. Such a rule could not be sound.

But it is probable that the chancellor was legally and sufficiently informed that he had rejected the evidence without motion therefor, or objection to it. In obedience to the 71st rule of the chancery practice, a note of the testimony offered by each party was entered on the minutes. This note seems full and complete. The different parts of the testimony offered for complainant, are numbered consecutively, from 1 to 15. At numbers 7 and 9 the minute-entry says, "the introduction of which is objected to by the defendants." To no other offer of evidence does the record show that any objection was made. We must conclude, then, that the other testimony was offered and produced without objection. *Inclusio unius est exclusio alterius.* The offer which probably relates to this subject, is in the following language: "8th—A transcript of a deed of assignment from Daniel McDougald to Jones and Alexander." This note of the evidence, entered on the minutes, must be regarded as the act of the court; and we think it is open to examination, as part of the "proceedings," on the question of error apparent.

But there is nothing in the opinion of the chancellor, or the decree in the original cause, which makes this "transcript of a deed of assignment" one of the facts proved, or which shows the existence and contents of such an instrument. All we know is, that a transcript of a deed was offered, and rejected, because it was not proved. We have shown above, that the chancellor was not permitted to look at the copy deed

found in the record ; nor can we consider it, in determining whether there is error apparent. Strike that copy of the assignment from our view, and how will the record stand? A transcript of a deed of assignment from McDougald to Jones and Alexander was offered. What were its contents and date? The chancellor says, that the witness O'Neal *testifies*, that the copy appended to interrogatories propounded to him, "is the copy of an original recorded by him and Simeon O'Neal." The chancellor adds, that he has no doubt that the copy spoken of by O'Neal "is in the same words and figures of that attached to the bill." Now, if we admit that this contains a statement by the chancellor, as a fact proved, that the copy mentioned by O'Neal is a copy of the exhibit to the bill, it is clear that the statement of the chancellor does not affirm, as a fact found, that the copy spoken of by the witness, "is the copy of an original recorded by him and Simeon O'Neal." His language is, that the witness *testifies*. This may be true, and the chancellor may not have believed the testimony of this witness ; or, his testimony may have been overborne by irresistible proof. The chancellor, as we have shown, could look only at the facts found—not the testimony which proved them.

But, leaving the transcript of the deed of assignment out of view, there is nothing left in the proceedings, opinion, or decree of the chancellor, which shows, or affirms, *as a fact*, that the transcript or record offered was a copy, either of the exhibit to the bill, or of the copy about which O'Neal testified. The exhibit to the bill is not even certified ; its execution is not admitted in the pleadings, and there is, in the record, no statement that it is proved. The statement of the chancellor, in regard to the copy of which O'Neal speaks, is, that he *testifies* it was recorded—not that it is proved. The statement in regard to the "transcript" or "record" offered, not only fails to show it was proved, but rejects the paper, because it was not proved. Hence, we cannot know the date or contents of the transcript offered, nor that it was a copy of the exhibit to the bill.

But there is another, and, if possible, more glaring defect

McDougald's Adm'r v. Dougherty.

in this feature of the case. The transcript, or record, (as it is indifferently called,) being left out of view, the record furnishes no evidence, which we can regard, that such transcript or record was certified by the clerk, or any other custodian of the deed, or of a registered copy of it. The only authentication of this transcript or record, which the chancellor mentions in his opinion, is in the following words : "The record has annexed what purports to be the copy of the certificate of Thomas M. Kemp, as a justice of the peace of this county, of the acknowledgment of the deed by McDougald before him." Who made out the copy, called a record or transcript, or who certified it, if any one, we are left to conjecture. From what is stated above, it will be seen that we discriminate between the two propositions,—first, that the deed was rejected by the chancellor *ex mero motu*, and, second, that it was rejected because it was secondary evidence. Of the first, we hold that he was sufficiently advised by the record. Of the second, he had no evidence which he could regard.

These reflections lead us to declare, that there was nothing legitimately before the chancellor, which enabled him to affirm that his former decree, rejecting the deed of assignment as not proved, was based on the theory that the evidence was only secondary. From anything that we can know, the paper offered bore no marks of authenticity ; and offered no claim to be considered secondary evidence, nor, indeed, evidence at all. Although the chancellor, in his opinion in the original cause, gave some reasons which were insufficient and unsound, there is nothing which shows that he erred when he declared that the execution of the deed was not proved. The present record does not present a case of error apparent which will uphold a bill of review.

[2.] The other ground on which the complainant seeks to have the decree in the original cause reviewed and reversed, is newly discovered evidence of the execution of the deed ; proof which existed in time to be used in the original suit, but of which, it is alleged, the complainant had no knowledge. It is also claimed that the complainat has shown a sufficient excuse for the non-production of this evidence on

the original trial, to bring himself within the rule. We need not decide this question. The testimony newly discovered is parol proof—consists in swearing, and is cumulative. It relates to a fact or facts—the execution and last known custody of the deed—which were in issue, and were attempted to be proved in the former suit. The rule is inflexible, and rests in the soundest public policy, that parol cumulative testimony to a fact in issue in an original cause, cannot be the foundation of a bill of review. To allow such testimony would invite to the greatest abuse—nay, sometimes, to subornation of perjury; and would tend to almost endless litigation. *Interest reipublicæ, ut sit finis litium. Caller v. Shields*, 2 Stew. & Por. 423; *Dexter v. Arnold*, 5 Mason, 312; *Rexpass v. McLanahan*, Hardin's Rep. 342; *Livingston v. Hubbs*, 3 Johns. Ch. 124; *Her v. Routh* 3 How. Miss. 292; *Foy v. Foy*, 25 Miss. 212; *Love v. Blewit*, 1 Dev. & Bat. 108; *Head v. Head*, 1 A. K. Marsh. 121; *Norris v. LeNeve*, 3 Atk. 36; *Taylor v. Sharp*, 3 Pre. Wms. 371; *Willan v. Willan*, 16 Vesey, 88; *Young v. Keighly, ib.* 351.

The wisdom of this rule is confirmed by the analogous principle in reference to new trials at law, on the ground of newly discovered, cumulative testimony.— *Watts v. Howard*, 7 Metc. 478; *Kirby v. Waterford*, 14 Verm. 414; *Den v. Wintermute*, 1 Green, N. J. 177: *Com. v. Flanagan*, 7 Watts & Serg. 415; *Fenin v. Protection Ins. Co.*, 16 Ohio, 147; *Schlencker v. Risley*, 3 Scam. 483; *Smith v. Schultz*, 1 Scam. 490; *Brown v. Stacey*, 5 Pike, 403; *Com. v. Murray*, 2 Ashm. 41; *Com. v. Williams, ib.* 69; *Robins v. Fowler*, 2 Pike, 133; *McGavock v. Brown*, 4 Humph. 251; *Tomlin v. Den d. Cox*, 4 Harris. N. J. 76. See, also, 3 U. S. Digest, p. 578, § 718.

The decree of the chancellor is reversed, and a decree here rendered, dismissing the bill of review. Let the appellee pay the costs in this court, and in the court below.

A. J. WALKER, C. J.—I agree fully with my brothers in the conclusion which they have attained, and assent to the judgment rendered. I concur also with all that is said by them upon the subject of newly discovered evidence, as

a cause for a review of the original decree. Upon the question whether there is error apparent in the original decree, I prefer to give my own reasons, and not to commit myself to all that is said by the majority of the court.

The imputation of *error apparent* rests upon an opinion expressed by the chancellor, in the statement of the reasons which influenced him to render the decree dismissing the bill. Upon the concession that the chancellor was in error, when he was led by his argument to the conclusion that he could not legally treat a certain paper as evidence, it follows that the decree was rendered for a wrong reason, but not that the decree itself was wrong. It is sometimes the case that correct judgments are rendered for erroneous reasons. Indeed, in this case, it does not appear that the chancellor would have rendered a different decree, if he had entertained the opposite opinion upon the point of evidence. There are other questions in the case, the consideration of which might have led to the same result. Even the chancellor's opinion in the original cause is not irreconcilable with the supposition, that the ground upon which he puts his conclusion was selected from a group, all having the same tendency and effect. It can not be affirmed, from the reading of the chancellor's opinion, that there were not several other lines of argument, approved by him, which would have conducted him to the conclusion expressed, and which he omitted to state, only because the one mentioned was entirely satisfactory to him, and was deemed capable of easy vindication. It would, therefore, be as unreasonable as it is unprecedented to pronounce the decree of the chancellor erroneous, because the reason given by him for that decree was incorrect. Error in the decree itself is indispensable to a reversal on appeal. On bill of review, there must not only be error in the decree, but the error must be "apparent." An assignment of error, that the chancellor's opinion was wrong, would be disregarded, even on appeal. There can be no reversal of a decree, merely because the chancellor has erred in the reason given for it.

Aside from the reason upon which the chancellor put his decree in the original cause, that decree was right, if the bill was materially defective, or if any valid defense set up

in the answers was sustained by the proof, or if the material allegations of the bill were not established. Before it could be ascertained that the decree was erroneous, it would be indispensable to examine and weigh the evidence in the cause, a large mass of which was produced on the trial. This cannot be done on bill of review. If it could, the distinction between appeals and bills of review, as remedies for errors, which is carefully kept up in the law-books would be destroyed. —*Perry v. Phillips*, 17 Vesey, 173 ' *Caller v. Shields*, 2 St. & P. 417; *Bradshaw v. Garrett*, 1 Porter, 47; *P. & M. Bank v. Dundas*, 10 Ala. 661.

Some modification of the English rule, as to what parts of the record may be examined on the bill of review, has obtained in this country; but it is still maintained that the evidence can not be examined and weighed for the purpose of testing the correctness of the decree.—*Dexter v. Arnold*, 6 Mason, 303; Story's Eq. Pl. § 407; *Tomlinson v. McKaig*, 5 Gill, 256; Mitford's Eq. Pl. (Am. ed. 1849,) 83–84, *n.*; 4 Bouvier's Ins. § 4125; 3 Dan. Ch. Pl. & Pr. 1727; *Caller v. Shields, supra; P. & M. Bank v. Dundas, supra; Webb v. Pell*, 3 Paige's Ch. 368; *Whiting v. United States Bank*, 13 Peters, 14.

That cannot be an "error apparent on the face of the decree," or an "error appearing or arising on the body of the decree," (as it is variously expressed,) which can only be discovered by an examination of the evidence and the determination of its weight and credibility. The correctness of the decree is always the question. A decree can never be reversed for an antecedent error, unless the erroneousness of the decree itself is a legal sequence of such error. The erroneousness of the decree, here, was not a legal sequence of the chancellor's opinion as to the question of evidence; and the decree ought not to be reversed, because that opinion may be considered wrong. That the decree was wrong, could only be affirmed upon an inquiry, which cannot be made upon bill of review; and, therefore, a bill of review can not, in my opinion, be sustained, for error apparent in this case. If it could, we might have the absurd consequence of a chancellor's being compelled to reverse a decree on bill of review, because a wrong reason

was stated in the opinion, when it was plainly seen that the decree was right; and this court might be required to do the equally absurd thing of approving a reversal for error apparent in an original decree, which decree it would have affirmed on appeal. No court, on appeal, or bill of review, can, consistently with justice and right, or with the law, as I understand it, deprive a party of his decree, unless it can be affirmed, upon legal principles, that the decree was wrong. To reverse for an error of opinion, where the rightfulness of the decree does not depend upon it, would make a party responsible for that which he had no agency in procuring, and no power to prevent, and which may have been done in despite of his protestations. If a decree is reversible for mere error in the reasons given, it would be far better that chancellors should abandon the wholesome and commendable practice of filing written opinions; for they will add to the uncertainties of the law, and cumulate the chances of reversal.