PAULINA S. WHITING, AND HELEN B. WHITING, HEIRS AT LAW OF RUGGLES WHITING, DECEASED, JAMES RICHARDSON, ADMINISTRATOR OF RUGGLES WHITING, AND ENFIELD JOHNSON, AND GABRIEL J. JOHNSON, APPELLANTS, *vs.* THE BANK OF THE UNITED STATES.

According to the course of practice in the Courts of the United States, in chancery cases, an original decree is to be deemed recorded and enrolled, as of the term in which the final decree was passed. A bill which seeks to have alleged errors revised for want of parties, or for want of proper proceedings after the decree against his heirs, after the decease of one of the parties, is certainly a bill of review; in contradistinction to a bill in the nature of a bill of review; which lies only where there has been no enrollment of the decree.

An original bill, in the nature of a bill of review, brings forward the interests affected by the decree, other than those which are founded in privity of representation.

In England, the decree always recites the substance of the bill and answer, and the pleadings, and also the facts on which the Court founds its decree. But in America, the decree does not, ordinarily, recite these, and, generally, not the facts on which the decree is founded. But with us, the bill and answer, and other pleadings, together with the decree, constitute what is properly considered as the record.

The bill of review must be founded on some error apparent upon the bill, answer, and other pleadings, and decree; and a party is not at liberty to go into the evidence at large, in order to establish an objection in the decree founded on the supposed mistake of the Court in its own deductions from the evidence.

No party to a decree can, by the general principles of equity, claim a reversal of a decree upon a bill of review, unless he has been aggrieved by it; whatever may have been his rights to insist on the error at the original hearing, or on an appeal.

decree of foreclosure of a mortgage, and of a sale, are to be considered as the final decree in the sense of a Court of Equity; and the proceedings on the decree are a mode of enforcing the rights of the creditor, and for the benefit of the debtor. The original decree of foreclosure is final on the merits of the controversy. If a sale is made after such a decree, the defendant not having appealed as he had a right to do, the rights of the purchaser would not be overthrown or invalidated even by a reversal of the decree.

After a decree of foreclosure of a mortgage and a sale, and the death of the defendant takes place after the decree, it is not necessary to revive the proceedings against the heirs of the deceased party before a sale of the property can be made.

APPEAL from the Circuit Court of the United States for the District of Kentucky.

The case as stated in the opinion of the Court, was as follows:—

" This is the case of a bill, purporting to be a bill of review. The substantial facts, as they appear on the record, are as follows:— Gabriel J. Johnson, being the owner in remainder of a five acre lot, No. 9, in Louisville, Kentucky, of which his mother, Enfield Johnson, was tenant for life, under the will of his father, and being also the owner in fee by another title of another piece of land adjoining the five acre lot, a part of the slip No. 2, on the 12th day of November, A. D. 1818, conveyed the same in mortgage to James D. Breckenridge, to secure the latter for his endorsements of three certain notes of Johnson to Ruggles Whiting, each for four thousand dollars, and for any other notes and contracts which Breckenridge should thereafter make, execute, accept, or endorse for the benefit of Johnson. Afterwards, on the 9th day of August, A. D. 1820,

Johnson & Breckenridge, as his surety, being indebted to the Bank of the United States in the sum of nine thousand nine hundred and thirty-one dollars and thirty-seven cents, arrangements were made between them and Whiting, by which Whiting assumed the payment of the same debt, and gave his note therefor, to the bank accordingly; and as security for the due payment thereof, Johnson and his mother Enfield Johnson, Breckenridge and Whiting, on the same day, executed a mortgage of the five acre lot and slip of land above mentioned to the Bank of the United States, reciting, among other things, the foregoing arrangement. The condition of the mortgage, among other things, stated, that it was agreed by the parties, that after the satisfaction of the said demands due by Whiting to the bank, and by Gabriel J. Johnson to Whiting, the estate or the residue thereof, or any surplus in money, by the sale thereof, should be paid or conveyed to Enfield Johnson, or her assigns. The mortgage also contained a stipulation for the sale of the premises, to meet the payment of the debt due to the bank. In April, 1823, the debt due and thus secured to the bank remaining unpaid, a bill for a foreclosure and sale was brought by the bank, in the Circuit Court of the United States for the District of Kentucky; and to that bill Gabriel J. Johnson, Enfield Johnson, and Whiting were made parties. But Breckenridge was not made a party. At the November term of the Circuit Court, A. D. 1826, a decree of foreclosure of all the equity or right of resumption of the defendants in the mortgaged premises, was passed; and a further decree, that the premises should be sold by commissioners. The sale took place accordingly; the bank became the purchasers, and the sale was confirmed by the Circuit Court, at May term, 1827. In the intermediate time between the original decree of foreclosure and the sale, viz., on the 26th of February, 1827, Whiting died in Massachusetts, leaving the plaintiffs in the present bill, Paulina Whiting, and Helen B. Whiting, and one L. R. Whiting (since dead without issue) his children and heirs at law—who were then infants under age; and the youngest, Helen, did not come of age until 1831.

The present bill is brought by Paulina Whiting and Helen B. Whiting, by James Richardson, administrator of Ruggles Whiting, and by Gabriel J. Johnson and Enfield Johnson, against the Bank of the United States: and after stating the proceedings in the original suit upon the mortgage, and that the sale was made at a great sacrifice of the property, it relies on the following grounds of error in the proceeding, decree and sale in the original suit. 1. That it was irregular and erroneous to entertain the bill, and pronounce the decree for foreclosure and sale, without Breckenridge being made a party defendant. 2. That it was irregular and erroneous to sell the property mortgaged without a revival of the suit against the heirs of Whiting. 3. That it was unjust and oppressive to sell in the manner and at the price at which the sale took place.

The answer of the bank denies all equity in the plaintiffs, and insists that the decree and sale were fair and just. It also denies that

Whiting and Breckenridge had any title to the property; and insists that they joined in the mortgage, merely to complete the arrangements made between Johnson and themselves. It also denies that the death of Whiting was known at the time of the sale. It states that the property was, after the purchase by the bank, improved, and parts thereof sold to bona fide purchasers, for valuable considerations; and by reason of the improvements, and the extension of the city, parts of the grounds so sold are now among the most beautiful and densely built parts of the city. The answer also states, that Whiting died insolvent and deeply indebted to the bank, by certain other judgments and notes."

The case was argued by Mr. Underwood, at the bar, and by a printed argument submitted by Mr. Lovering for the appellants; and by Mr. Serjeant for the appellees.

For the appellants, Paulina and Helen Whiting, it was contended, they have an evident interest in the land. Being all infants at the death of their father, in February, and at the rendition of the last decree in May, they are within the exceptions of every statute of limitations operating by direct or remote analogy on this case; and their rights being joint, the disabilities must be removed before the statute can run. In England the limitation to bills of review is twenty years, and by the law of the United States five years, on writs of error; which furnishes the criterion in this case. Act of the Legislature of Kentucky, of 1816. May *vs.* Marsh, 2 Litt. Rep. 148

The interest of Whiting in the land was also certain and evident, and material. The title to the bank was his only security for a part, at least, of his large demand, and the only consideration for his assumption of the debts of Johnson to the bank. The hopeless insolvency of Johnson rendered the security of the land the only means of indemnity for his responsibility for the debt of ten thousand dollars,—the bank held the property as a trustee for his benefit.

The proceeding in the original cause was to be regulated by the laws of Kentucky; and as Breckenridge had an interest in the property, he should have been made a party. The record shows the existence of this interest; and he has been deprived of it by the decree of the Court; and yet no notice of the proceedings has been given to him.

By the laws of Kentucky the assignee of a promissory note is liable to the assignor, if due diligence has not been used to collect the note; and Brackenridge was the endorser of notes given for a steamboat. Whiting had proceeded on the notes against Johnson, and had obtained judgment against Johnson. He then made an agreement to discharge Johnson, holding Breckenridge liable on his endorsements. The mortgage was the means of indemnity to Breckenridge, and for this reason he was a necessary party in the proceedings to foreclose. Any balance which should remain after paying the debt to the bank, would have been applied for the relief of Breckenridge, on the notes of Johnson. Morrett *vs.* Western,

2 Vern. -663.   Haines *vs.* Beach, 3 Johns. Ch. Rep. 456. 4 Ch. Rep. 605.   Ensworth *vs.* Lambert, 6 Ch. Rep. 450.  4 Con. Rep. Su. Ct. U. S. 190.   Caldwell *vs.* Taggart, 4 Peters, 190. · Mayo *vs.* Tompkins, 6 Mun. 520.

The sale of the property after the decree of foreclosure was irregular, without reviving the proceedings against the representatives of Whiting. His death before the sale made it as necessary to make his heirs and representatives parties as it was originally necessary to make Whiting a party. If it is said, that there was a right to sell under a levy made before the death of the defendant; a number of authorities sustain the contrary position.

The party defendant has a right to come in after a sale, and object to it; if any thing in the proceedings has been irregular or illegal. If the return to the order of sale had stated that all the parties were dead, would the Court have confirmed the sale? By the laws of Kentucky the defendant has a right to point out what part of the estate may be sold under an order of sale. The necessity of the presence of the defendant at the sale, is therefore apparent. Both Breckenridge and Whiting were dead at the time of the sale, and yet the sale was confirmed. The decree confirming the sale should therefore be opened, and the parties now before the Court should be allowed to come in and redeem. Allen *vs.* Belcher et al. 2 Hen. & Mun. 595. Also Mackey *vs.* Bell, 2 Mun. 523. Lovell *vs.* Dana, 2 Mun. 367. Forman *vs.* Hunt, Ibid, 622.

The interest in the complainants is sufficient for a bill of review. 4 John J. Marshall's Reports, 500. This case shows that a bill of review will lie in such a matter as that now presented to the Court.

This case will be decided by the cases which have been decided in the Courts of Kentucky. In Kentucky bills of review are allowed for errors on the face of the record, and not in cases where the error is in the decree only. In Kentucky a bill of review lies for any error in the proceedings in the case. There the decree does not, as in England, set forth the whole matter in the cause; and to deny a bill of review on the principles which apply to the cases in the Court of Chancery in England, would be to deny it altogether.

If this is the law, and it will not be denied, the record exhibits such errors as may be brought before the Court by a bill of review. Brackenridge was a necessary party. He had a deep interest in the proceedings against the land.

No exception will lie to the bill on the ground of the interference of the statute of limitations. It was filed within five years after the sale, and the termination of the minority of the children of Whiting. The law of the United States saves the rights of minors.

While it is admitted that no case has been cited in which a bill of review has been sustained, principally like that now before the Court; yet it is claimed that in such a case a writ of error would lie if the proceedings had been at law; and the bill of review in a chancery case is analogous to a writ of error in a case at law. The argument for the appellees is, that if in the course of the proceedings

2

to sell the property, exceptions were not taken to their regularity, they cannot now be taken notice of by a bill of review. Yet writs of error are maintained in suits on the ground of want of parties. The practice is to send back the proceedings, and allow amendments to be made which will bring the merits of the case forward. This is a similar case. 6 John J. Marshall's Rep. 197.

The heirs may come in and show they were not parties to the sale, and may examine the manner in which it was conducted. This is essential to the proceedings in the case.

It is said that the decree is final on the order of foreclosure of the mortgage; but this is erroneous. The proceedings in the case are not final until the property is sold, and the proceedings of sale confirmed by the Court. The equity of redemption continues, until the sale of the property and the ratification of the sale. A party who has a decree of foreclosure in his favour, in proceedings on a mortgage, cannot hold the property under the decree. By the decisions of the Courts of Kentucky, a sale of the mortgaged premises must be made; and the residue of the proceeds of the sale, after payment of the debt, must be paid to the mortgagor. Suppose part of the estate sold and the mortgage satisfied; does not the residue belong to the mortgagor? This shows a continuing interest in the property mortgaged, until the proceedings of sale are completed.

Mr. Sergeant for the appellees.—

The objections by the appellants are to the sale of the property. The first matter to be noticed is, that the interests in the land sold under the decree of foreclosure, have essentially changed. The property has been sold without warranty, and large and expensive buildings have been erected upon it. This is stated in the answer of the Bank of the United States to the complainant's bill; and in the agreed statement of facts.

"It is admitted that the bank pulled down a plain brick dwelling-house, as appears in said will, No. 2, on said lot where Fifth Cross Street, if extended, would run and extend said street to Walnut Street, and they sold, as stated in the answer, to different persons, and the improvements stated of the Roman Catholic church and others, extension of the street and other improvements have been made and put upon the ground, and that the persons named are living on the lot aforesaid."

All these persons have expended large sums in the improvement of the property, and the question before the Court is, whether all that was done in 1827 shall be undone; and the parties be permitted to come in and redeem. This is what is asked. It is not the course of a Court of equity, on a bill of review, to bring into review what has been decided. If such a bill were allowed, it would be in the nature of an answer, and bring again into controversy all that had been passed upon by the Court. The res adjudicata, is in equity as at law. The rule must be the same.

There are bills of review in the nature of original bills, as when

a person has not been made a party to the original proceedings, and may be affected by them. Mr. Breckenridge might in this case have come in, if he had been injured.

There are two other descriptions of bills of review in England. 1. A bill filed after the original bill has been enrolled, or there has been a final decree. 2. A bill filed when the decree has not been made, and before enrollment.

The error must be apparent on the face of the decree, and the Court cannot go into the evidence in the original proceedings. Story's Equity, 334. Lord Eldon in Perry vs. Philips, 17 Vez. 178. No persons but parties or privies can have a bill of review. Gilbert, For. Rom. 186. Slingsby vs. Hale, 1 Chan. Cas. 122. And none but those who have an interest in the proceedings can maintain such a bill; nor unless they suffer from the particular error assigned, or pointed out in the decree. Webb vs. Pell, 3 Paige, 368. Mitford (by Jeremy), 205. Other persons in interest, and privies in title or estate, who are aggrieved by the decree, may have an original bill in the nature of a bill of review, so far as their own interests are concerned. Wyatt, 98. 100. Mitford, 92.

Opportunities, during the proceedings on a bill in chancery, to interpose and correct errors, are always afforded, as by demurrer or by plea, when proper parties may be introduced. 16 Vez. 325. Mitford, 180. Cowper, 185. 3 Paige, 222. 2 Paige, 281. The Court will then decide on the matters presented, and if necessary there may be an amended bill, or a supplemental bill. But such a decision would not be an error in the decree to entitle to a bill of review. This is much stronger where a party has been omitted and does not complain; as in the case before the Court, in which Breckenridge is not a party.

But in addition to all these matters, Whiting had not a title to the property, or any interest in it. It had never been his, and the proceeding to foreclose against him, divested every equitable claim he could set up. The decree of foreclosure was in the lifetime Whiting, barring him and his heirs, and the statute of limitations began to run from the time of the decree. An execution levied does not stop by the death of the party. The sale did not require as a prerequisite to its proceeding and completion, that the heirs should be brought in.

Finally. The bill of review is barred by length of time. Elmendorf vs. Taylor, 10 Wheat. 150. More than five years have elapsed from the decree to the filing of the bill of review. The statute, as has been said, began to run its course in the life of Whiting; and it was not stopped by disabilities occurring on his death.

Mr. Justice Story delivered the opinion of the Court.

This is the case of a bill, purporting to be a bill of review. The substantial facts, as they appear on the record, are as follows: Gabriel J. Johnson being the owner in remainder of a five acre lot,

No. 9, in Louisville, Kentucky, of which his mother, Enfield Johnson, was tenant for life, under the will of his father, and being also the owner in fee, by another title, of another piece of land adjoining the five acre lot, (a part of the slip No. 2,) on the 12th day of November, A. D. 1818, conveyed the same in mortgage to James D. Breckenridge, to secure the latter for his endorsements of three certain notes of Johnson to Ruggles Whiting, each for four thousand dollars, and for any other notes and contracts which Breckenridge should thereafter make, execute, accept, or endorse, for the benefit of Johnson. Afterwards, on the 9th day of August, A. D. 1820, Johnson, and Breckenridge, as his surety, being indebted to the Bank of the United States in the sum of nine thousand nine hundred and thirty-one dollars and thirty-seven cents, arrangements were made between them and Whiting, by which Whiting assumed the payment of the same debt, and gave his note therefor to the bank accordingly; and as security for the due payment thereof, Johnson and his mother, Enfield Johnson, Breckenridge, and Whiting, on the same day executed a mortgage of the five acre lot and slip of land above mentioned, to the Bank of the United States, reciting, among other things, the foregoing arrangement.

The condition of the mortgage, among other things, stated, that it was agreed by the parties, that after the satisfaction of the said demands due by Whiting to the bank, and by Gabriel J. Johnson to Whiting, the estate, or the residue thereof, or any surplus, if money, by the sale thereof, should be paid or conveyed to Enfield Johnson or her assigns. The mortgage also contained a stipulation for the sale of the premises, to meet the payment of the debt due to the bank. In April, 1823, the debt due and thus secured to the bank remaining unpaid, a bill for a foreclosure and sale was brought by the bank, in the Circuit Court of the United States for the District of Kentucky; and to that bill, Gabriel J. Johnson, Enfield Johnson, and Whiting were made parties. But Breckenridge was not made a party. At the November term of the Circuit Court, A. D. 1826, a decree of foreclosure of all the equity or right of redemption of the defendants in the mortgaged premises was passed; and a further decree, that the premises should be sold by commissioners. The sale took place accordingly; the bank became the purchasers; and the sale was confirmed by the Circuit Court, at the May term, 1827. In the intermediate time between the original decree of foreclosure and the sale, viz., on the 26th of February, 1827, Whiting died in Massachusetts, leaving the plaintiffs in the present bill, Paulina Whiting, and Helen B. Whiting, and one L. R. Whiting (since dead without issue) his children and heirs at law; who were then infants under age; and the youngest, Helen, did not come of age until 1831.

The present bill is brought by Paulina Whiting and Helen B. Whiting, by James Richardson, administrator of Ruggles Whiting, and by Gabriel J. Johnson and Enfield Johnson, against the Bank of the United States; and after stating the proceedings in the original suit upon the mortgage, and that the sale was made at a great

sacrifice of the property, it relies on the following grounds of error in the proceedings, decree, and sale in the original suit. 1. That it was irregular and erroneous to entertain the bill and pronounce the decree for foreclosure and sale, without Breckenridge being made a party defendant. 2. That it was irregular and erroneous to sell the property mortgaged, without a revival of the suit against the heirs. of Whiting. 3. That it was unjust and oppressive to sell in the manner and at the price when the sale took place.

The answer of the bank denies all equity in the plaintiffs, and insists that the decree and sale were fair and just. It also denies that Whiting or Breckenridge had any title to the property; and insists that they joined in the mortgage merely to complete the arrangements made between Johnson and themselves. It also denies that the death of Whiting was known at the time of the sale. It states that the property was, after the purchase by the bank, improved, and parts thereof sold to bona fide purchasers for valuable considerations; and by reason of the improvements and the extension of the city, parts of the grounds so sold are now among the most beautiful and densely built parts of the city. The answer also states, tha' Whiting died insolvent and deeply indebted to the bank, by certain other judgments and notes.

Such are the material facts and statements in the case, and upon them, so far at least as the present bill of review is concerned, there is no controversy between the parties. The prayer of the bill is, that the proceedings may be *revived*, (as the word stands on the record, probably by mistake, for *reviewed*;) and that the decrees and sale may be set aside, that the plaintiffs may be permitted to redeem; and for other relief.

Some suggestions have been made as to the nature and character of the present bill—whether it is to be treated as a bill of review, or what other is its appropriate denomination. As the original decree, which it seeks to review, was properly, according to our course of practice, to be deemed recorded and enrolled as of the term in which the final decree was passed, it is certainly a bill of review in contradistinction to a bill in the nature of a bill of review; which latter bill lies only when there has been no enrollment of the decree. Being a bill brought by the original parties and their privies in representation, it is also properly a bill of review in contradistinction to an original bill in the nature of a bill of review; which latter bill brings forward the interests affected by the decree other than those which are founded in privity of representation. The present bill seeks to revive the suit by introducing the heirs of Whiting before the Court; and so far it has the character of a bill of revivor. It seeks also to state a new fact, viz., the death of Whiting, before the sale; and so far it is supplementary. It is, therefore, a compound bill of review, of supplement, and of revivor; and it is entirely maintainable as such, if it presents facts which go to the merits of the original decree of foreclosure and sale.

It has also been suggested at the bar, that no bill of review lies

VOL. XIII.—B

for errors of law; except where such errors are apparent on the face of the decree of the Court. That is true in the sense in which the language is used in the English practice. In England, the decree always recites the substance of the bill and answer and pleadings, and also the facts on which the Court founds its decree. But in America the decree does not ordinarily recite either the bill, or answer, or pleadings; and generally not the facts, on which the decree is founded. But with us the bill, answer, and other pleadings, together with the decree, constitute what is properly considered as the record. And, therefore, in truth, the rule in each country is precisely the same, in legal effect; although expressed in different language; viz., that the bill of review must be founded on some error apparent upon the bill, answer, and other pleadings, and decree; and that you are not at liberty to go into the evidence at large in order to establish an objection to the decree, founded on the supposed mistake of the Court in its own deductions from the evidence.

Having made these explanations, which seemed proper with reference to the arguments pressed at the bar, we may now return to the consideration of the direct points presented for the consideration of the Court. The third and last error relied on in the bill, has been abandoned at the argument; and therefore it need not be examined. The other two remain to be disposed of. And first, as to the supposed error in not making Breckenridge a party to the original bill. Assuming that he was a proper party to that bill, still it is to be considered, that it was an objection which ought properly to have been taken by the present parties at the original hearing, or upon the appeal (if any) before the appellate Court. And upon a bill of review it cannot properly be relied on as matter of error, unless it can be shown that the nonjoinder has operated as an injury or mischief to the rights of the present plaintiffs. No such injury or mischief has been shown, or is pretended. Breckenridge is not bound by the original decree, because he was no party thereto; and, therefore, his interests cannot be prejudiced thereby. But if they were, he, and he alone, has a right to complain, and to seek redress from the Court; and not the plaintiffs, who are not his representatives, or entrusted with the vindication of his rights. Breckenridge has made no complaint and sought no redress. We think, therefore, that this error, if any there be, not being to the prejudice of the plaintiffs, cannot furnish any ground for them to maintain the present bill; for no party to a decree can, by the general principles of equity, claim a reversal of a decree upon a bill of review, unless he has been aggrieved by it; whatever may have been his rights to insist on the error at the original hearing, or on an appeal.

In the next place, as to the sale of the mortgaged premises after the death of Whiting, without a revival of the suit against his heirs. It is not even pretended in the bill of review, that there was any fraud in the sale; nor upon the argument has any irregularity even been insisted on. What then is the gravamen? That the land was sold honestly and fairly, but for a less price than its real value.

Now, such an objection, even in the mouth of Whiting himself, if he had been living, would have constituted no valid objection to the sale, or the confirmation thereof; but at most would have furnished only a motive to induce the Court, in its discretion, to have ordered a resale, or to have opened the biddings. It would be no matter of error whatever. If this be a correct view of the subject, it is plain that the heirs of Whiting cannot be entitled to be put in a better predicament than Whiting himself; and no decree in equity ought to be reversed for matter of mere favour, and not of right.

But is the objection itself, in principle, well founded? That depends upon this; whether the decree of foreclosure and sale is to be considered as the final decree in the sense of a Court of Equity, and the proceedings on that decree a mere mode of enforcing the rights of the creditor, and for the benefit of the debtor; or whether the decree is to be deemed final only after the return and confirmation of the sale by a decretal order of the Court. We are of opinion that the former is the true view of the matter. The original decree of foreclosure and sale was final upon the merits of the controversy. The defendants had a right to appeal from that decree, as final upon those merits, as soon as it was pronounced, in order to prevent an irreparable mischief to themselves. For, if the sale had been completed under the decree, the title of the purchaser under the decree would not have been overthrown, or invalidated even by a reversal of the decree; and consequently the title of the defendants to the lands would have been extinguished; and their redress upon the reversal would have been of a different sort from that of a restitution of the land sold. In Ray vs. Law, (3 Cranch R. 179,) it was held by this Court, that a decree of sale of mortgaged premises, was a final decree in the sense of the Act of Congress, upon whi... an appeal would lie to the Supreme Court. This decision must have been made upon the general ground, that a decree, final upon the merits of the controversy between the parties, is a decree upon which a bill of review would lie, without and independent of any ulterior proceedings. Indeed, the ulterior proceedings are but a mode of executing the original decree, like the award of an execution at law. If this be the true view of the present decree, and the proceedings thereon, then it is plain that this bill of review is not maintainable for two reasons, each of which is equally conclusive. The first is, that no error is shown in the original decree, for the only pretended error is in the sale under the decree. The second is, that this bill of review was not brought within five years after the original decree was rendered in the lifetime of Whiting; and the statute of limitations, having once begun to run, cannot be stopped by any subsequent intervening disabilities.

If, then, the original decree was unobjectionable and conclusive; if there has been no fraud in the subsequent sale, pursuant to that decree; and if there has been, in a legal sense, no prejudice to any rights of the plaintiffs in the original decree, or the sale, then,

although there was no revivor before the sale, there is no error upon which a bill of review will lie to entitle the parties to a reversal. We do not say whether the Circuit Court might or might not in its discretion have required a revival of the suit before the sale was confirmed, if the fact of the death of Whiting had been distinctly brought to its knowledge. But we do mean to say, that the non-revival was not matter of error, for which the proceeding on the sale under the original decree, (for that is all which the present bill seeks to redress,) can or ought to be reversed.

The decree of the Circuit Circuit dismissing the bill, is, therefore, affirmed with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Kentucky, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this Court that the decree of the said Circuit Court in this cause be, and the same is hereby affirmed with costs.