ShaCKElford, J.,
delivered the opinion of the Court.
The complainant, on the 4th of May, 1865, filed his attachment bill in the Chancery Court, for the County of Hawkins vs. the defendant, as an absconding debtor, in which he alleged the defendant was indebted to him, by note, in the sum of $1,500, payable in Confederate money, with Anderson Dalton and D. Morris as his securities.
The note was dated 18th of October, 1862, due one day after date. An attachment was issued and levied on the lands of the defendant — publication made and pro oonfesso, taken, at the November Term, 1865. This cause, with a number of others, were consolidated, in which attachment bills had been filed. A decree was rendered in favor of the complainant, and against defendant, for $1,600, and the costs. The Clerk & Master was directed to sell the lands attached, requiring $1,500 to be paid in cash, to be distributed between the creditors, and to report to the nest term, the amount due some of the ■ claimants in the bills filed. Where the same had not been stated with sufficient certainty to make a final decree, the Clerk failed to sell the land, but made report of the amount due the several claimants. On the 4th of May a decree was made, confirming the report of the Clerk, and directing a sale of the lands, upon a credit of six *297 and twelve months, first paying cost’s and solicitor’s fees, etc. The defendant prayed an appeal from the decree, which was refused by the Court. The defendant has filed the record in this case for error, and given the requisite security, etc. It is now moved by the complainant, to dismiss the writ of error.
It is assigned, as error, there has been no final judgment, from which a writ of error will lie. By sec. 3176 of the Code, a writ of error lies from the final judgment of the County Court to the Circuit or Supreme Court, and from the Circuit or Chancery Court to the Supreme Court, in all cases where an appeal in the nature of a writ of error would have lain. Was this a final decree?
We think it was. The rights of the parties were settled by the terms of the decree of the 5th of November, 1865. The complainant recovered his debt and costs. The lands attached, were ordered to be sold to. satisfy the judgment. It was an adjudication of the rights of the parties. The subsequent decrees, to be rendered after the sale of the land, were the only means of executing the decree. This Court held, in the case of Dunlap et al. vs. Hunter and others, 1 Sneed, 101, “A decree is final when all the facts and circumstances material and necessary to a complete explanation of the matters in litigation, are brought before the Court, and so fully and clearly ascertained on both sides, that the Court is enabled, upon full consideration of the case made out, finally to determine between them according to equity and good conscience.” They say it may be final, although it directs a reference to the Master.
*298 In tbe case of Whiteing vs. Bank of the United States, 13 Peters, 15, it was beld, a decree of foreclosure, and sale of mortgaged premises, was a final decree, and tbe defendant entitled to bis appeal, without waiting for tbe return and confirmation of sale by tbe decretal order.
In the case of Targay vs. Conrad, 6 Howard, 204, the Court say: “When tbe decree decides tbe right to tbe property in contest, and directs it to be delivered up, by the defendant to tbe complainant, or directs it to be sold, or directs tbe defendant to pay a certain sum of money to the complainant, the complainant is entitled to have such decree carried immediately into execution.”
Tbe decree must be regarded as a final one, and authorizes an appeal. We are satisfied, upon principle and authority, tbe decree in this cause was final. Tbe defendant is entitled to file the record for error. Tbe motion to dismiss is overruled. Tbe note being for Confederate Money, tbe bill must be dismissed. This Court beld, at tbe last terms at Nashville and Jackson, (manuscript opinions,) where it appeared tbe consideration of a note was Confederate money, the contract would not be enforced; it was issued for an unlawful purpose, and in direct violation of the Constitution of tbe United States, and all contracts, founded upon it, were illegal; and tbe Court would not lend its active aid to enforce them. In the case of Isler vs. Brunson, 6 Hump., 277, it was beld: “If a party plaintiff, brings into a Court of law or equity, an illegal contract, that it may be enforced, and this *299 illegality is set forth, and shown by himself, and not by plea or allegation of defendant, it is the duty of the Court to refuse the enforcement of such contracts.”
The principle is a plain and familiar one, founded in reason and public policy, and applicable to this case.
The decree of the Chancellor will be reversed, and the bill dismissed.