H. B. North, Appellee, v. Henry T. Hultberg et al., Skandia Coal and Lumber Company, Appellant.

Gen. No. 9,700.

Opinion filed January 27, 1942. Rehearing denied February 27, 1942.

WELSH & WELSH, of Rockford, for appellants; C. K. WELSH, of Rockford, of counsel.

HALL & DUSHER, of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellee brought suit in the circuit court of Winnebago county to foreclose a trust deed on the west 50 feet of lot 11 in block 7 of Washington Park subdivision in the town of Rockford, executed by Signe E. Johnson and Carl R. Johnson, her husband, on September 4, 1930, to secure the payment of $3,000 due in three years. Appellee owned the notes. The amended complaint sought to impose liability upon successive grantees of the premises, and Skandia Coal and Lumber Company, beneficial owner through such conveyances, and for whose benefit they were admittedly made, under an alleged oral agreement to assume and pay the debt and the taxes on the property. It was also alleged that the premises have an easement in a water system, the well and equipment of which is located on nearby property of appellant, and from which the premises in controversy receives a water supply through a pipe.

The court entered a decree finding appellant (Skandia Coal and Lumber Company), liable for the amount of the debt, including principal, interest, at-

torney's fees and taxes on the premises, and ordering the makers of the notes and appellant, or some one or more of them, to pay the same and the costs of suit within 10 days; that in default of such payment the premises be sold; that in case of a deficiency the makers of the notes and appellant pay such deficiency, and in default thereof plaintiff shall have judgment and execution against them for the amount thereof and interest thereon. The decree also found that appellant is liable for all back taxes on the premises, if any, reserving for future consideration and order all matters relating to such taxes as between the parties; that there exists in favor of the premises, an easement in the water system mentioned, and continues a temporary injunction restraining disconnection thereof until the further order of the court and reserving jurisdiction to protect such easement. The appeal is from those portions of the decree.

Appellee's motion to dismiss the appeal on the ground that the decree is not a final judgment or decree was taken with the case, and will be first considered. As to the taxes, the court reserved for future consideration and order all matters relating thereto as between the parties. As to the alleged easement the court merely continued the temporary injunction, without any order as to the final disposition of that question. Manifestly those parts of the decree are interlocutory only and not final. Whether it is final, so as to be appealable on the question of appellant's liability for the debt, remains to be considered.

That part of the decree relating to any deficiency is not final or appealable, because whether there will be a deficiency, or the amount thereof, obviously cannot be determined until after the sale. That question is therefore not before us. (*Eggleston v. Morrison,* 185 Ill. 577; *Thomson v. Black,* 208 Ill. 229.) This is a wholly different matter from the question of liability

for the debt. In each of the above cases a judgment of the Appellate Court affirming a foreclosure decree, where liability for the debt was thereby fixed, was affirmed. The complaint in the case at bar alleges an agreement by appellant, at the time it acquired beneficial ownership of the property, to pay the mortgage debt. This allegation was traversed, and testimony heard upon the question. It is a controversial issue of fact. The decree adjudicates that issue, and orders appellant to pay plaintiff the amount of $5,585.69, which includes principal, interest and attorney's fees.

A final judgment reviewable by appeal or error, within the meaning of the statute, is one which finally disposes of the rights of the parties either upon the entire controversy or upon some definite and separate branch thereof. (*Orwig v. Conley*, 322 Ill. 291; *Sebree v. Sebree*, 293 Ill. 228.) To be final and appealable, a decree must terminate the litigation between the parties on the merits of the case, so that, if affirmed, the trial court has only to proceed with the execution of the decree. Where the decree retains jurisdiction in the court for further consideration of controversial matters pertaining to the merits of the cause, it is not a final decree. (*Rogers v. Barton*, 375 Ill. 611 (615). In *Chicago & N. W. R. Co. v. Chicago*, 148 Ill. 141 at page 153, the court said: "Where a decree or judgment is final, the proceedings under it are only a mode of executing it, like the award of an execution. For example, a decree of foreclosure and sale has been held to be final, and the subsequent report and confirmation of the sale to be merely a mode of enforcing the rights of the creditor." Citing *Whiting v. Bank of United States*, 13 Pet. 6, and *Grant v. Phoenix Mut. Life Ins. Co.*, 106 U. S. 429. The decree in the instant case decided the issue on the question of assumed liability for the debt, and did not retain jurisdiction for any further consideration of that controversy. In our opinion, it is a final decree in that respect and the

motion to dismiss the appeal is denied. (*Stahl v. Stahl*, 220 Ill. 188.)

On the question of whether appellant is liable for the debt and taxes as having assumed and agreed to pay the same when it acquired the beneficial ownership of the premises, the record shows that Signe E. Johnson owned all of lot 11. Her husband was a plastering contractor. He built several houses on his own account, including four on separate portions of lot 11, which for convenience, will be called tracts 1, 2, 3 and 4, numbered from west to east. The foreclosure here is on tract 1. The well and equipment of the water system is on tract 3. Carl E. Johnson owed appellant $14,139 for building material, a part of which was used in constructing the house on tract 1. Henry Hultberg and John H. Holstrom were respectively the secretary and the assistant secretary of appellant. Stuart E. Mattoon was the bookkeeper. In March 1931, the Johnsons executed their note and trust deed to Holstrom, as trustee, to secure the debt to appellant, conveying equities in several properties, including tract 1. During the following November, they conveyed to him tract 2 by warranty deed "subject to encumbrances now of record" and the "general taxes for 1931 and thereafter," in connection with which a letter to Carl R. Johnson, signed by Holstrom, as assistant secretary, recited: "When Mr. Carl R. Johnson pays us his account or notes in full, the property will be deeded to him or to anyone that he might select." In March 1932, Johnson and his wife conveyed to Holstrom, by warranty deed, tracts 1, 3 and 4, and other property. It states a consideration of one dollar and other valuable considerations in hand paid. There are no exceptions or reservations in the deed. In June 1932, Holstrom conveyed all four tracts to Mattoon. The trust deed securing the $14,139 note was released in November 1932. In February 1934, Holstrom, Hultberg and Mattoon incorporated the

Skandia Real Estate Company, for the purpose of holding in its name title to the properties owned by appellant, and during the same month, Mattoon conveyed all of lot 11 to the real estate company, which held title when the foreclosure suit was filed. Each of the conveyances mentioned were for the benefit of appellant, Skandia Coal and Lumber Company.

Appellee claims the indebtedness under his trust deed and the notes were assumed by appellant and that through Holstrom it agreed to pay the same when the property was acquired from the Johnsons. Appellant claims Holstrom made no such agreement, and that even if he had done so, he had no authority to make it, and the agreement would not be binding upon appellant.

Johnson and his wife each testified he was unable to pay the debt to appellant and offered to deed the property, intending to go to Texas and engage in raising grapefruit; that the property was deeded on account of such indebtedness, with the understanding and agreement by Holstrom, for appellant, to assume and pay appellee's mortgage, and the interest and taxes; that they were to be freed from all liability and were to have nothing further to do with the property. Johnson testified that the taking care of appellee's mortgage was his only object in deeding the houses. Appellee testified that on one occasion Holstrom told him: ''Your loan is good. We'll take care of it, we have always treated you right, haven't we?''; and that at another time Holstrom said: ''Well, don't foreclose it, we will take care of it.'' Holstrom denied making any such agreement with the Johnsons and denied he told appellee in any of the conversations that appellant would pay the mortgage, interest or taxes.

The complaint alleges that appellant did pay the encumbrances on the other tracts. The allegation is not traversed and stands as admitted. After the transfer appellant, through Holstrom, repeatedly

promised appellee, by letters on its stationery, signed by him as assistant secretary, to pay the interest and taxes, and applied part of the rents to the payment of interest. One of the letters, dated July 25, 1935, stating an intention to pay the taxes, is signed by Holstrom as vice-president. Appellant finally paid the past due taxes on lot 11 under the act of July 26, 1939 (Ill. Rev. Stat. 1941, ch. 120, par. 337i, *et seq.* [Jones Ill. Stats. Ann. 119.828, *et seq.*]), which provides for instalment payments and eliminates interest and penalties. Prior to that time, it claimed the taxes on tract 1 could not be paid because lot 11 was assessed as one tract.

Appellant never at any time claimed or suggested that appellee should look to the property or to the Johnsons for payment of his debt. Appellee testified that at one of the conversations at appellant's office, in the presence of Holstrom and Hultberg, he said he had taken their promises and they had not kept them; that Holstrom said there was less than one hundred dollars in the rent account; that the witness then said that if he did not receive a check or statement by 10 o'clock the next morning he would start action; that he was going to see whether they could keep his money, and that they probably had twelve or fourteen hundred dollars of his; that he had trusted them and thought they would attend to it,—pay the note and interest and pay the note when it came due, and they had done nothing; to which no reply was made except Holstrom said that was a pretty short time, and that it was not then convenient to do so. Holstrom was then representing appellant as was Hultberg and they did not deny its liability to pay the note and interest. In August 1935, appellee wrote appellant: ''Your note for $3,000.00 secured by mortgage (on tract 1) with interest from September 4th, 1932, is due September 4th. We do not care to have it run on in its present condition, inasmuch as you are paying neither taxes

or interest, and are retaining the rents. What do you propose to do about it?'' The record does not show any reply to this letter, which plainly states the note was appellant's obligation. Thus, appellant twice failed to deny liability when asserted by appellee. A well-established rule is that when a party remains silent under such circumstances, he is bound by his silence. The failure to deny liability should estop appellant from now doing so. All these circumstances strongly tend to corroborate the testimony of the Johnsons.

Hultberg, called by appellee as a witness under section 60 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.060], testified on direct examination that Holstrom was in charge of building material and real estate operations, and supervised the purchase and sale of building material, collection of rents, and the handling of the real estate account; that if a purchaser of building material could not pay for it and the property had to be taken over, Holstrom would take care of that. On cross-examination he at first testified that Holstrom had complete charge of appellant's holdings and the right to bind it to assume a mortgage not signed by it. On further cross-examination he testified that in the capacity of assistant secretary, Holstrom had no authority to bind appellant in a promise to assume and agree to pay an encumbrance. On redirect examination, he testified that if Holstrom ever took title in his own name from a person indebted to appellant and afterward conveyed the property to it at its request he did not recall it. On recross-examination he said he knew Holstrom took title in his own name to the property in controversy for the benefit of appellant. The chancellor heard the cause in open court. He saw the witnesses, could observe their demeanor on the stand, and was in a position to judge of their credibility. His finding that appellant is liable for the debt and taxes, necessarily implies a holding that Holstrom, for ap-

pellant, did agree with the Johnsons, to pay appellee's debt and the taxes, and that he had authority to do so. We cannot say that the holding is against the manifest weight of the evidence. *Hall v. Pittenger,* 365 Ill. 135. The evidence, in our opinion, sufficiently justifies the decree as to appellant's liability and this being the only question properly before us, the decree is affirmed.

*Decree affirmed.*