## RAMSEY et al. v. CURTIS.
## RAMSEY v. CURTIS.
### Nos. 10219, 10294.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 8, 1950.

Decided May 1, 1950.

2. In the present case, of course, petitioner was accused of robbery and had not yet come to trial.

Mr. William H. Ramsey, Washington, D. C., for appellants.

Mr. Jacob N. Halper, Washington, D. C., for appellees.

Before WILBUR K. MILLER, PROCTOR and BAZELON, Circuit Judges.

## WILBUR K. MILLER, Circuit Judge.

These appeals have to do with the estate of William E. Andrews, who died January 19, 1942, leaving a will dated August 17, 1936. He bequeathed and devised to his wife, Myrtle, all his property except his home on Fairmont Street in the District of Columbia, which he devised to the Central Union Mission, subject to his wife's right to occupy it throughout her life. About two hours after Andrews' death, two deeds were filed for record, both dated April 21, 1937. One was a conveyance of the Fairmont Street residence from Andrews and wife to a straw party, and the other was from the straw party to Mrs. Andrews.

Some two years after the testator's death, Ramsey and Wilson, executors of his will, sued to cancel the first deed of April 21, 1937, alleging Andrews' signature thereto was forged. Tried to the court without a

jury, the action was dismissed on May 15, 1946, because the trial judge concluded the signature was genuine.

In the same action Andrews' executors filed, on January 19, 1948, a "Petition for Leave to File a Complaint in the Nature of a Bill of Review". As Mrs. Andrews had died in 1947, they named her executor, Carl T. Curtis, as defendant in her stead. There was attached to the petition a copy of the "Complaint in the Nature of a Bill of Review" [1] which they desired to file, which alleged (a) errors of law apparent on the face of the record, (b) newly discovered evidence, and (c) fraud practiced on the court in procuring the decree attacked. Upon receipt of these documents, the clerk of the District Court stamped both as "Filed", instead of treating the bill of review as an exhibit to the petition which sought leave to file it, and to which it was attached. We shall advert to this stamping episode hereinafter.

Either without noticing, or without attaching importance to, the clerk's premature stamping of "Filed", the District Court, on June 24, 1948, refused leave to file, being of the opinion, from an examination of the tendered bill, that the claim of newly discovered evidence was not well founded, and that the claims of error apparent and fraud were issues determined in the original trial, subject to review only on appeal.

The appellants attempted to escape this adverse ruling by converting the bill into one which they could file as a matter of right. To that end they obtained from opposing counsel and filed a stipulation that one of the grounds relied upon in their petition for permission to file—newly discovered evidence—might be dismissed; appellants then moved the court to amend the order of June 24, 1948, which denied leave

1. This was technically a misnomer. The tendered pleading should have been styled a "bill of review". A bill designed to review a decree recorded and enrolled is a "bill of review", as distinguished from a "bill in the nature of a bill of review", which lies only where there has been no enrollment of the decree. Whiting v.

Bank of the United States, 1839, 13 Pet. 6, 38 U.S. 6, 10 L.Ed. 33. But many courts have disregarded technical refinements and have used the terms interchangeably. We shall sometimes refer to appellants' misstyled "Bill in the Nature of a Bill of Review" as a bill of review.

to file the bill of review, by adding thereto the following:

"The effect of this Order is limited to the second ground of the Complaint [in the nature of a bill of review], to wit, the production of newly discovered evidence."

This strategy was designed to take advantage of the rule that, although a bill of review based wholly or partly on newly discovered evidence cannot be filed without leave of court, such a bill grounded on error apparent may be filed as a matter of right.

The appellants apparently thought the court's denial of their petition for leave to file the bill as originally drawn was nothing more than a formal refusal of leave to file, and did not indicate any consideration of or decision concerning the three grounds for review set forth in the bill. They attempted, because of that belief, to obtain a consideration of the merits of their pleas of error apparent and fraud by eliminating the ground of newly discovered evidence, the inclusion of which had made it necessary to ask leave to file the bill.

On February 21, 1949, the District Court denied appellants' motion to amend its original order denying leave to file the bill of review by limiting the denial to the ground of newly discovered evidence. In the same order the court directed that the bill of review, improvidently stamped "Filed" by the clerk, be stricken as a pleading and be considered only as an exhibit to the petition for leave to file it.[2] The executors appeal in case No. 10,219 from the order of February 21, 1949. They state these points:

"1. The Court erred in granting appellee's motion to strike the Complaint.

"2. The Court erred in denying appellants the right to be heard on error apparent, and fraud, after they had dismissed the ground of newly discovered evidence from their Complaint."

■ Of the first point, little need be said. When there was filed a petition asking the court's permission to file an attached bill of review, which could be filed only with that permission, the clerk of the court could neither anticipate nor foreclose the court's action on the petition for leave by merely stamping "Filed" on the tendered bill of review. The trial judge did not err in ordering the bill of review to be treated as only an exhibit to the petition for leave to file it.

■ Appellants' second point is based on their assumption that the District Court denied them the right to be heard on error apparent and fraud. They say the denial was error. But the assumption was unwarranted; the court did not deny them the right to be heard on those claims, but actually ruled concerning them. This is so because the District Court critically examined the tendered bill and found it wanting. Its refusal to permit filing, based as it was on the bill's insufficiency, was tantamount to holding that the bill itself did not state facts upon which the relief sought could be granted. It was as though the bill had actually been filed and a demurrer to it sustained. Acord v. Western Pocahontas Corporation, C.C.S.D. W.Va.1907, 156 F. 989, affirmed per curiam 4 Cir., 1909, 174 F. 1019, certiorari denied 1910, 215 U. S. 607, 30 S.Ct. 408, 54 L.Ed. 346. So much for the procedure.

■ The question then arises, although it was not expressly presented by appellants,[3] did the District Court err in holding the bill of review failed to state facts upon which relief could be granted? We think not. The errors of law said to be apparent on the record were the court's exclusion of certain proffered testimony, and its ruling that the evidence showed the challenged deed had been delivered. Those are, of course, matters concerning which the appellants could have complained on appeal, and are not errors apparent which can be raised by a bill of review. Whiting v. Bank of the United States, 1839, 13 Pet. 6, 38 U.S. 6, 10 L.Ed. 33; Ex parte Thomas,

---

2. This was pursuant to a motion filed November 5, 1948, by the appellee, who apparently had not known before of the clerk's error in filing the exhibit as though it were a pleading.

3. Probably because they did not understand that the question had been passed on by the court when it refused to permit the bill to be filed.

1940, 73 App.D.C. 50, 114 F.2d 847. The same is true with respect to the plea that fraud was practiced on the court to induce its judgment. The alleged fraud was an issue in the original proceeding and was there determined adversely to the appellants; and it was not what is called "extrinsic fraud" which may be investigated on a bill of review.[4] The evidence said to be newly discovered was cumulative and tended to contradict the testimony of Mrs. Andrews after her death. Such evidence was properly held insufficient to justify reopening the case.

Finally, in explanation of the District Court's authority to entertain and decide this case after bills of review and bills in the nature of a bill of review had been abolished by an amendment to Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which became effective March 19, 1948, not only *in futuro* but also as to actions then pending, it should be noted that Rule 86 authorized the court to disregard the amendment when to apply it in a case pending at its effective date would work manifest injustice.

The judgment appealed from in case No. 10,219 is affirmed.

The appeal in No. 10,294 is by Andrews' executors from an order sustaining exceptions to items of expense shown in their third account. Those items were amounts paid to handwriting experts and to cover other costs in connection with their unsuccessful attempt to have the court adjudge the deed a forgery. With respect to these expenses the trial court found facts as follows:

"The executors of the above estate stated their third account, * * * Carl T. Curtis, executor of the * * * residuary legatee, filed exceptions and objections claiming * * * the items of the account to which objection is made, and for which the executors claim allowance, cover expenditures in the prosecution of a suit by these executors * * * wherein the executors seek to set aside a conveyance of real estate, devised by the testator to Central Union Mission, but conveyed, in his life time, to his wife * * *

"The executors were unsuccessful in this suit.

"The real estate was not required for the payment of debts and such legacies as are chargeable upon the real estate.

"There was no report of the auditor of the court ascertaining and reporting the debts and legacies, the deficiency of personal assets and designating the real estate necessary to be sold for the payment of debts and legacies."
and reached this conclusion of law:

"Real estate, which passes by devise, is without the jurisdiction of the Probate Court, unless there be a deficiency of personal assets to pay debts and legacies, followed by the procedure before the auditor of the court prescribed by Sec. 18—607 D. C.Code 1940.

"The exceptions should be sustained."
Having so concluded, the court sustained the exceptions and disallowed the expenses claimed by the executors.[5]

In making its findings and reaching its conclusion, the court obviously had in mind §§ 607, 608 and 609 of Title 18 of the Dis-

---

4. Reed v. Stanley, C.C.N.D.Cal.1898, 89 F. 430, Id., 9 Cir., 1899, 97 F. 521; see also Whiting v. Bank of the United States, 1839, 13 Pet. 6, 14, 38 U.S. 6, 14, 10 L.Ed. 33, where the Court said: "* * * the bill of review must be founded on some error apparent upon the bill, answer and other pleadings, and decree; and that you are not at liberty to go into the evidence at large, in order to establish an objection to the decree, founded on the supposed mistake of the court in its own deductions from the evidence."

5. The executors of Andrews' will were Ramsey and Wilson and this appeal is by Ramsey, the survivor of them. Mrs. Andrews died testate after the suit to set aside the deed had been decided in her favor and the appellee, Carl T. Curtis, is the executor of her will. Throughout the remainder of this opinion, in order to avoid confusion, Andrews' executors, or his surviving executor, will sometimes be referred to as "Ramsey" and Mrs. Andrews' executor will sometimes be referred to as "Curtis."

trict of Columbia Code (1940), which permit the probate court to authorize an executor's sale of real estate only when the sale is necessary to pay debts and such legacies as are charges upon the real estate, and then only after the court's auditor had "* * * ascertained and reported such debts and legacies, the deficiency of personal assets, and the real estate necessary to be sold for the payment of debts and legacies; * * *." [6]

If the expenses in controversy had been incurred by Ramsey in attempting, in violation of these quoted sections, to sell the decedent's real estate in order to pay debts and legacies, the court's findings of fact would have been germane to the issue, and its conclusion of law, which is correct in the abstract, would have justified the disallowance of the items of expense, in the absence of additional circumstances requiring their allowance.

■ But Ramsey's suit to cancel the deed as forged was not for the purpose contemplated in §§ 607, 608 and 609, and consequently compliance with the terms of those provisions was not a condition precedent to his right to institute the action. He did not seek to sell the Fairmont Street residence to pay debts and legacies; he did not seek to sell it for any purpose. Nor did he seek to recover the real estate for the purpose of then selling it to pay debts or legacies nor for any other purpose. It follows that the District Court erred in disallowing Ramsey's expenses on the ground he had not complied with §§ 607, 608 and 609, and therefore had no right to file the suit.

Since these three sections did not justify the District Court in holding that Ramsey lacked authority to file the suit, the question then becomes, was there any other justification for the court's conclusion that Ramsey was without authority to sue?

■ The common law rule is that, in the absence of a statutory provision otherwise, the only person who can maintain an action to avoid the deed of a decedent is he who would take the property, either by the terms of the will or the laws of descent, if the deed were set aside. Consequently, Andrews' executors acted beyond their power in suing to avoid the deed, unless there was statutory authority for them to do so.

■ In Kashouty v. Deep, 1942, 75 U. S. App.D.C. 259, 126 F.2d 233 we construed § 501 of Title 20 of the District of Columbia Code [7] as not only permitting, but requir-

6. The text of §§ 18—607 and 18—609 is as follows:

§ 607. "The probate court shall have plenary authority to administer also the real estate situated in the District of Columbia of decedents so far as may be necessary for the payment of debts and legacies, and to distribute among those entitled thereto any surplus proceeds of any sale of real estate made in the course of such administration, and the bonds of all executors and administrators shall be responsible for the proceeds of sale of all real estate sold by them under the order of the said justice for such purposes of administration: *Provided, however,* That no such sale shall be made unless the same be required for the purposes of paying debts and such legacies as are chargeable upon the real estate, nor until the auditor of the court shall have ascertained and reported such debts and legacies, the deficiency of personal assets, and the real estate necessary to be sold for the payment of debts and legacies; and such report shall be subject to exception. (Mar. 3, 1901, 31 Stat.

1214, ch. 854, § 146; June 30, 1902, 32 Stat. 527, ch. 1329.)"

§ 609. "If the said probate court shall be satisfied, upon a report of the auditor, that it is necessary to sell said real estate, or part thereof, it shall authorize the same, or so much thereof as may be necessary for the payment of the debts or legacies, or both, to be sold by the executor or administrator, on such terms as the court may direct. Any surplus of the proceeds of such sale, after payment of debts and legacies and costs of administration, shall be deemed real estate, and shall be distributed among the heirs or devisees as the right may appear. (Mar. 3, 1901, 31 Stat. 1214, ch. 854, § 148.)"

Section 608 permits the persons interested in the estate to avoid such a sale by giving bond for the payment of debts, legacies and the costs of administration.

7. The section is sufficiently quoted in that portion of the Kashouty opinion which is reproduced in footnote 8.

ing, the presence of an executor as a plaintiff in an action of this nature.[8] That decision, rendered prior to the filing of the present case, has not been overruled or modified, and certiorari was not sought. Andrews' executors, therefore, were warranted in relying upon the Code provision, so construed, as direct statutory authority to institute an action to avoid the deed.

This is true despite the suggestion that § 20—501, being limited by its terms to personal actions, does not apply to a real action such as this, that the Kashouty opinion incorrectly interpreted the section as generally authorizing an executor to attack his testator's deed as forged or as having been fraudulently obtained, and that the real basis of that decision was the second of the two holdings announced in the opinion to the effect that a will which directs the executor to sell the real and personal property and distribute the proceeds amounts to a devise of the realty and a bequest of the personalty to the executor, with the result that he alone can maintain a suit to avoid the testator's deed, because nothing descends to the heirs or next of kin, who consequently have no standing to maintain the action. Whether correct or not, Kashouty v. Deep authoritatively interpreted the Code provision as permitting the institution of the action, so the District Court erred in holding it unauthorized. Andrews' executors, having properly sued under § 20—501 as that section was construed in the Kashouty opinion, were entitled to charge the estate with the expenses incurred in the litigation unless, as that Code provision says, " * * * there

were not probable grounds for instituting" the suit in which the judgment adverse to them was rendered. We are not prepared to hold there were no probable grounds here. To the contrary, it seems to us the appellants had ample reason for filing the suit. It should be noted that § 20—501, which must be regarded as applicable for the purposes of this case, does not require the probate court's consent to the suit, and does not provide for procedure similar to that which must be followed before the probate court can authorize an executor to sell real estate to pay debts and legacies.

Entirely apart from what has been said, we observe that the appellee, Curtis, took a position in the case so inconsistent with that taken by his testatrix that there arises what borders upon equitable estoppel. Indeed, the principle requiring consistency in judicial proceedings is sometimes considered a form of true equitable estoppel. The inconsistency between the position taken by Mrs. Andrews and that taken by Curtis is apparent: When the suit was filed, Mrs. Andrews could have challenged her husband's executors' standing to sue, in which event the District Court, had it ruled as it later did on Curtis' exceptions, would have sustained the challenge and Andrews' executors would have been ousted as plaintiffs and could not have incurred the expense of litigation. But without suggesting the incapacity of the executors to sue, the grantee-defendant went to trial and the District Court entertained and decided the case on its merits. Because of this Ramsey incurred the expense of litigation.

8. The portion of the opinion to which we allude is the following:

"This is an appeal from a judgment which avoids a deed of real property. The suit was brought by the appellees, who were heirs of the grantor, Fannie Deep, deceased, and were also the chief beneficiaries of her will. The defendant, appellant Kashouty, a nephew of Mrs. Deep, was the grantee in the deed. The trial court found that he procured the deed by undue influence.

" * * * we must reverse, since the complaint shows that the deceased left a will which has been filed with the Register of Wills, though not yet proved, and which, unless invalid, requires the presence of the named executor as a plaintiff in this suit. The District Code provides: 'Executors and administrators shall have full power and authority to commence and prosecute any personal action at law or in equity which the testator or intestate might have commenced and prosecuted, except actions for injuries to the person or to the reputation * * *.' [D.C.Code (1940), § 20—501. Cf. § 20—310.] If the deed was procured by undue influence, and the deceased left a valid will, her executor has a right to avoid it."

■ It was only long after the case had been determined and when the executors sought reimbursement that Curtis suggested their lack of authority to institute the action, which he did by excepting to the items of expense. In sustaining the exceptions and disallowing the items, the District Court held for the first time that Ramsey could not institute the action, although it had theretofore heard and decided the case on its merits. We regard it as inequitable to deny reimbursement at the tardy suggestion of incapacity to sue, when the expense would have been avoided had the suggestion been seasonably made.

■ A majority of the court think there is a third and conclusive reason for holding, as we do, that Ramsey should not have been denied his expenses on the ground that he had no right to bring the suit. For, entirely apart from § 20—501, we find in another section of the Code ample authority for Andrews' executors to attack the deed. We refer to § 403 of Title 12 of the Code, which is that:

"Any executor, administrator * * * may, for the benefit of creditors and others interested in the estate * * * disaffirm, treat as void, and resist all acts done, transfers, and agreements made in fraud of the rights of any creditor, including themselves and others interested in any estate or property held by or of right belonging to any such trustee or estate; * * *."
This Code provision is clumsily worded, but its meaning is ascertainable. With respect to it we said in Hurwitz v. Hurwitz, 1943, 78 U.S.App.D.C. 66, 67, 136 F.2d 796, 797, 148 A.L.R. 226:
"* * * That section applies to executors, administrators, receivers, assignees or trustees of an estate or of the property of an insolvent estate, corporation, association, partnership or individual. It permits such officers to stand in the shoes of persons interested in the estate, and to set aside for the benefit of such persons transfers which they themselves could have attacked."

■ We think the Hurwitz opinion correctly construed § 12—403. The provision is clearly in derogation of the common law

rule that an executor may not sue to recover the testator's realty unless it was devised to him for sale and distribution. Paraphrasing the language of the Hurwitz case, the Code provision permits Andrews' executors to stand in the shoes of the Central Union Mission, which is interested in the estate, and to set aside for the benefit of the Mission a transfer which the Mission itself could attack. It is our opinion that § 12—403, without more, authorized Andrews' executors to file this suit; that being so, the District Court, for that reason also, erroneously disallowed their expenses.

For the reasons stated, the executors were entitled to charge to the estate the expenses incurred in the litigation about the deed. The cause will be remanded to the District Court to overrule the exceptions to these items of expense, unless the excepting party can support his exceptions on other grounds.

Case No. 10,219 affirmed; case No. 10,294 reversed.